**Bruce PARADIS, et al.**

v.

**UNITED TECHNOLOGIES, PRATT & WHITNEY DIVISION.**

**Civ. No. H–87–319 (PCD).**

United States District Court, D. Connecticut.

Nov. 3, 1987.

Leon M. Rosenblatt, Clayman, Markowitz & Litman, Bloomfield, Conn., for plaintiffs.

Albert Zakarian, Day, Berry & Howard, Hartford, Conn., for defendant.

RULING ON MOTION TO REMAND

DORSEY, District Judge.

On April 14, 1987, plaintiffs instituted this action in Hartford Superior Court. On April 22, 1987, defendant removed it claiming it arises under 29 U.S.C. § 185(a). 28 U.S.C. § 1441.

Plaintiff Bruce Paradis ("Paradis")[1] was an employee of defendant for ten years prior to his discharge on or about March 28, 1985. Plaintiffs allege that defendant has represented "to all its employees that it provides professional, confidential assistance to employees who believe they have an addiction to alcohol or some other drug ..., [and] that said employees will not be discriminated or retaliated against for having previously abused alcohol or drugs." Complaint at ¶¶ 4, 5.

In July 1984, Paradis confided in defendant that he suffered from an addiction to drugs. With defendant's help, he entered a residential addiction treatment facility in August 1984 and, upon successful completion of that program, he returned to work in September 1984. Upon his return, Paradis requested that he be relocated to avoid confronting those former employees with whom he had formerly used drugs. Allegedly in violation of what plaintiff claims was defendant's promise of confidentiality, defendant alerted its own security department and state law enforcement authorities of Paradis' drug problem and further requested that he divulge and assist defendant and the authorities in arresting the drug using employees. Paradis refused to assist. He was discharged on March 28, 1985, allegedly because he refused to assist defendant in identifying, and law enforcement authorities in arresting, other employees who used drugs. As a result of said actions, plaintiffs claim that:

1. They suffered emotional distress as a result of defendant's extreme and outrageous behavior.

2. Defendant's termination of Paradis contravened public policy and constitutes tortious wrongful discharge.

3. Defendant made promises and representations to Paradis on which plaintiff was justified on relying and which defendant was estopped from retracting.

4. Defendant disciplined and discriminated against Paradis because he exercised his right to privacy, his right to free speech, and other rights provided him by Conn.Gen.Stat. § 31–51q, *et seq.*

5. Defendant's conduct as to both plaintiffs constituted fraud, deceit and intentional or negligent misrepresentation.

Section 1441, 28 U.S.C., provides that actions that could have originally been brought in federal court may be removed to that court by the defendant. Defendant argues that Paradis' employment was covered by a Collective Bargaining Agreement and thus his rights are determined by the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).

The initial focus in determining removability is on a plaintiff's "well pleaded" complaint. A plaintiff is considered "the master of his complaint [and] may ordinarily avoid federal question jurisdiction by exclusive reliance on state law." *Caterpillar, Inc. v. Williams,* —— U.S. ——, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *Gully v. First Nat'l Bank,* 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936). In LMRA litigation, however, courts have recognized an exception to the well-pleaded complaint rule known as the "complete preemption doctrine." *Caterpillar,* 107 S.Ct. at 2430; *see also Paige v. Henry J. Kaiser Co.,* 826 F.2d 857, 861 (9th Cir.1987) (analyzing complete preemption doctrine under guise of artful pleading doctrine).

Under the complete preemption doctrine, the preemptive force of a federal statute is considered so powerful that it " 'converts an ordinary state common law complaint

---

1. Paradis' wife, Cheryl, is also a named plaintiff.

into one stating a federal claim for the purposes of the well pleaded complaint rule.'" *Id.* 107 S.Ct. at 2430, quoting *Metropolitan Life Ins. Co. v. Taylor*, —— U.S. ——, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987). Section 301 of LMRA is an example of the complete preemption doctrine. *Id.* 107 S.Ct. at 2430. It confers jurisdiction in the district courts of the United States over "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a)[2]. The preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of a collective bargaining agreement "notwithstanding the fact that state law would provide a cause of action in the absence of § 301." *Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 23, 103 S.Ct. 2841, 2853–54, 77 L.Ed.2d 420 (1983); *see also Avco Corp. v. Machinists*, 390 U.S. 557, 558, 88 S.Ct. 1235, 1236, 20 L.Ed.2d 126 (1968). Stated another way, "when resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement made between the parties to a labor contract, that claim must either be treated as a § 301 claim ... or dismissed as preempted by federal labor contract law." *Allis Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985) (citations omitted). This rule, however, in its application by different courts, has led to different results in similar fact scenarios. *Baldracchi v. Pratt & Whitney Aircraft Div.*, 814 F.2d 102, 107 (2d Cir.1987) ("In deciding that Baldracchis' wrongful discharge claim is not preempted by section 301, we are aware that other circuit courts have reached varying conclusions on this issue."); *Olguin v. Inspiration Consolidat-*

*ed Copper Co.*, 740 F.2d 1468, 1473 (9th Cir.1984) (discussing confusion in labor preemption area).

In reality, the problem can best be illustrated in the context of a line spectrum. At one end are those claims which are indisputably linked to the collective bargaining agreement, i.e., a claim of unjust termination by an employee covered by a just cause collective bargaining provision. At the other end are claims completely independent of and unrelated to the collective bargaining agreement, i.e., an employee's claim that he was assaulted by his employer. In between these two ends lies a significant gray area. Plaintiffs' claims must be tested by "whether the claims exist independent of any rights established by the contract" or whether the claims are "inextricably intertwined" with consideration of the terms of the contract. *Allis Chalmers*, 471 U.S. at 213, 105 S.Ct. at 1912.

### A. *Wrongful Discharge in Violation of Public Policy*

In Count Two, Paradis claims that defendant's termination of his employment "contravened public policy and constitutes tortious wrongful discharge."[3] Complaint at ¶ 22. This claim is based primarily on the fact that on March 18, 1985, Paradis was fired from his job allegedly because "he and his wife refused to participate in a 'bust' and in the other efforts of the defendants to track down employees who abuse drugs. The pretext for terminating him was that he had used illegal drugs at work more than nine months earlier." *Id.* at ¶ 17. Although Connecticut still follows the employment-at-will rule, it has extended some protection to employees by prohibiting discharges which are in violation of public policy. *D'Ulisse Cupo v. Board of Directors of Notre Dame High School*, 202 Conn. 206, 211 n. 1, 520 A.2d 217 (1987);

---

**2.** Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce, as defined in this Chapter, or between any such labor organization, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. 29 U.S.C. § 185(a).

**3.** Although it would seem, by reading Count Two, that Paradis was raising two separate claims, i.e., a discharge which was wrongful and a discharge which was in violation of public policy, he has characterized that count as raising only the latter claim. Plaintiffs' Memorandum of Law in Support at 3.

*Sheets v. Teddy's Frosted Foods,* 179 Conn. 471, 427 A.2d 385 (1980).

■ That protection is not provided, however, to employees whose discharge is contractually protected by a just cause provision. *D'Ulisse Cupo,* 202 Conn. at 211, n. 1, 520 A.2d 217. Article I of the Collective Bargaining Agreement between Paradis and defendant provided that defendant had the right and responsibility "to discharge or otherwise discipline any employee for just cause." Article VII of that agreement established a grievance procedure by which employees, like Paradis, could voice their objections to defendant's actions and request review in arbitration if they were not satisfied with the initial levels of review. Plaintiffs' Count Two is intimately bound with the Collective Bargaining Agreement. Regardless of whether Paradis' termination was due to his refusal to assist defendant or whether it was because he used drugs, resolution of the propriety of defendant's decision depends on whether it was just or unjust. That is a question which was intended by defendant and Paradis, through his collective bargaining agent, to be decided under the contract.[4] *Franchise Tax Board,* 463 U.S. at 23, 103 S.Ct. at 2853.

### B. *Violation of Conn.Gen.Stat. § 31–51q*

■ In Count Four, Paradis claims that defendant disciplined and discriminated against him because he exercised his rights to privacy and free speech under Conn.Gen. Stat. § 31–51q.[5] Section 31–51q extends protection to employees from infringement by employers of their rights under the

First Amendments to the United States Constitution and Article One of the Connecticut State Constitution. Although it is not clear from the complaint, Paradis has presumably premised this claim on the allegations that his refusal to assist defendant and state law enforcement authorities by divulging the names of other drug using employees. This claim lies at the opposite end of the spectrum than the wrongful discharge claim. Section 31–51q provided Paradis with rights wholly separate from those afforded him under the Collective Bargaining Agreement and which could not be emasculated by such agreement. *Allis Chalmers,* 471 U.S. at 212, 105 S.Ct. at 1911; *Baldracchi,* 814 F.2d at 105. This claim is not preempted under § 301 and was improperly removed.

### C. *Emotional Distress, Estoppel, Fraud, Deceit and Misrepresentation*

Plaintiffs' remaining claims fall within the gray area of the spectrum. Determining whether they are preempted under § 301, and therefor properly removed, or not preempted, and therefor properly remanded, depends upon which facts those rights are premised.

■ In Count Three, Paradis alleges that defendant promised him that he would not be terminated, disciplined or otherwise retaliated against if he confided in plaintiff. Complaint at ¶ 15. His allegation of fraud, deceit and misrepresentation claimed in Count Five are presumably premised on the same factual allegations.[6] Defendant argues that these claims are inextricably in-

---

4. The fact that plaintiff seeks reinstatement lends support to this conclusion. His employment relationship with defendant was governed by the Collective Bargaining Agreement. Whether he was terminated justly or unjustly and, therefore, entitled to reinstatement, is something which should be decided under the contract.

5. Nothing in this opinion should be construed to mean that the court has considered the legal merits of plaintiffs' claims.

6. Plaintiffs claim that defendant represents to all its employees that it provided professional,

confidential drug addiction assistance. Complaint at ¶ 4. Article XXV of the Collective Bargaining Agreement provides that the "company and union agree to cooperate in encouraging employees suffering from illness of alcoholism or from drug dependency to undergo a coordinated program directed to their rehabilitation." No details of how that program is implemented are provided. The agreement does not provide for promises of confidentiality on defendant's part. Plaintiffs have not premised their claim on the basis that defendant violated this provision.

tertwined with the Collective Bargaining Agreement because they hinge on the terms and conditions of Paradis' Collective Bargaining Agreement. It argues that plaintiffs are attempting to limit the just-cause provision by claiming that defendant promised not to terminate Paradis for drug usage. Although defendant is correct in noting that Counts Three and Five necessarily call into question the propriety of Paradis' discharge, defendant is incorrect in concluding that that fact thereby preempts plaintiffs' claims. Plaintiffs are not claiming that defendant represented that drug usage would not constitute a just-cause reason for terminating Paradis, but that defendant would not terminate him if he confided in it, *irrespective* of whether his drug usage would be considered just cause for his termination. Under that construction of the complaint, plaintiffs need only show that Paradis' termination was contrary to what defendant promised, not that it was unjust. In response, defendant would merely have to show that it made no such promise. Neither party would have to resort to construing the contract.[7] *Cf. Baldracchi*, 814 F.2d at 105. Plaintiffs rely on promises made independent of the Collective Bargaining Agreement. *Caterpillar.* Counts Three and Five are not preempted and are hereby remanded.

Lastly, plaintiffs' claims of emotional distress lie on both ends of the spectrum. Plaintiffs claim that defendant applied constant pressure over a period of approximately seven months to force them to cooperate with its investigators and with the state authorities. This pressure consisted of yelling at plaintiffs, badgering them at home and at work, and threatening to cause them to be arrested. Complaint at ¶ 15. These claims are intertwined with defendant's alleged mistreatment of Paradis' drug problem and his willingness to confide in defendant—claims which, as noted previously, were separate from and independent of the Collective Bargaining Agreement. Quite clearly, yelling at plaintiffs at home is more of a tort claim than it is a labor dispute. "The collective bargaining agreement does not envision such behavior and its grievance mechanism is not equipped to address it." *Tellez v. Pacific Gas & Elec. Co.*, 817 F.2d 536, 534 (9th Cir.1987). On the other hand, to the extent plaintiffs claim emotional distress resulting from the termination of Paradis, such claim would be covered by the Collective Bargaining Agreement. "[C]laims for emotional distress are preempted when they arise out of the employee's discharge or the conduct of the defendant's in the investigatory proceedings leading up to the discharge." *Scott v. Machinists Automotive Trades Lodge 190*, 827 F.2d 589, 594 (9th Cir.1987) (distinguishing *Tellez* because statements were not made in the course of the grievance or related in any other way to the obligations made under the collective bargaining agreement).

Accordingly, plaintiffs' claims of emotional distress relating to the fact of Paradis' termination are preempted and were properly removed; those claims which relate to defendant's alleged mistreatment of Paradis' drug problem and personal harassment of plaintiffs are not preempted and are remanded.[8]

*Conclusion*

Counts Three, Four and Five and that part of Count One relating to defendant's

---

7. Although a number of courts have considered claims of misrepresentation and fraud to be preempted under § 301, *Martin v. Associated Truck Lines*, 801 F.2d 246 (6th Cir.1986); *Bale v. General Telephone Co.*, 795 F.2d 775 (9th Cir. 1986); *Gibson v. A.T. & T. Technologies*, 782 F.2d 686 (7th Cir.1986), a number of others have followed the rationale discussed in this decision. *Anderson v. Ford Motor Co.*, 803 F.2d 953 (8th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987); *Miller v. Fairchild Indus.*, 668 F.Supp. 461 (D.Md.1987).

8. Defendant also argues that *Perry v. Thomas*, — U.S. —, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987), authorizes the complete preemption of plaintiffs' claims due to the existence of the Collective Bargaining Agreement's arbitration provision. *Perry* reapproved the supremacy of arbitral provisions in the face of state statutes which provided for legal action irrespective of the existence of an arbitration provision. It did not consider the question of whether the mere existence of an arbitration provision provided a basis for removability.

mistreatment of Paradis' drug problem and its alleged harassment of plaintiffs are not preempted under § 301 and are remanded to the Superior Court.

Count Two and that part of Count One relating to plaintiffs' claims of emotional distress arising from Paradis' termination are preempted under § 301. Any motion to compel arbitration shall be filed within thirty (30) days hereof.

SO ORDERED.