Verna M. BINKLEY, Plaintiff,

v.

William D. LOUGHRAN, Sue Dupor, and Southern Bell Telephone and Telegraph Company, Defendants.

Verna M. BINKLEY, Plaintiff,

v.

William D. LOUGHRAN, Sue Dupor, Herman Baker, and Southern Bell Telephone and Telegraph Company, Defendants. (Two Cases)

Civ. Nos. C–87–900–G, C–87–901–G and C–88–399–G.

United States District Court, M.D. North Carolina, Greensboro Division.

Nov. 10, 1988.

Debra I. Johnson, High Point, N.C., and B. Ervin Brown, II, Winston–Salem, N.C., for plaintiff.

Fred T. Hamlet, R. Cameron Cooke, M. Daniel McGinn and William P.H. Cary, Greensboro, N.C., and Audrey L. Polk and Keith W. Kochler, Atlanta, Ga., for defendants.

## MEMORANDUM OPINION

BULLOCK, District Judge.

In November of 1987, Plaintiff filed an action in the General Court of Justice, Superior Court Division of Guilford County, North Carolina, against Defendants Loughran, Dupor, and Southern Bell alleging intentional infliction of emotional distress, invasion of privacy, conversion, and negligent retention and supervision of an employee. Just four days later, Plaintiff filed a substantially identical action in the same court, adding Herman Baker as a defendant. In December of 1987, Defendants had both of these actions removed to this court.

Thereafter, Plaintiff filed a motion to remand both actions to state court, and she also filed a third action in state court against all Defendants on April 4, 1988. This suit alleged intentional infliction of emotional distress, two counts of invasion of privacy, and conversion of and trespass to chattels.

On May 6, 1988, Defendants had the third action removed to this court and once again Plaintiff filed a motion to remand. On October 6, 1988, this court scheduled a hearing to clarify which causes of action Plaintiff intended to pursue. At that time, Plaintiff's counsel stated that they considered the third complaint, filed in April, to be an amendment to the first two complaints. Thus, this court will consider Plaintiff's motion to remand with regard to the allegations in her third complaint.

## BACKGROUND

At all times pertinent to this action and up to the present, Plaintiff has been employed by Defendant Southern Bell as a frame technician. At various times during Plaintiff's employment with Southern Bell, Defendant Dupor was her first-level supervisor, Defendant Loughran supervised Dupor, and Defendant Baker was district manager for the region in which Plaintiff worked.

In her first and second lawsuits, Plaintiff first alleged that the conduct of Defendants resulted in intentional infliction of emotional distress. Plaintiff based one cause of action on such alleged conduct as falsely accusing Plaintiff of managing her truck leasing business during company time, requiring Plaintiff to work during accrued vacations, refusing to pay Plaintiff overtime pay, berating Plaintiff concerning her work performance, "ridiculing, insulting, and humiliating the Plaintiff in the workplace in the presence of others or to others," refusing to allow Plaintiff to leave the premises of Southern Bell during her break period, denying Plaintiff work opportunities and office benefits, and retaliating against Plaintiff for reporting to Defendants' supervisors their misconduct and violations of the collective bargaining agreement in force at Southern Bell. The other intentional infliction of emotional distress claim centered on Defendants' alleged publication of the fact that Plaintiff was receiving psychiatric care and their rummaging through and misplacing her personal belongings while she was absent from work. Plaintiff claimed that these actions were "a retaliatory effort to force the Plaintiff to relinquish her contractual rights without cause or justification."

In her third cause of action, Plaintiff claimed that Defendant Baker intentionally inflicted emotional distress upon her by knowing of but failing to stop the alleged tortious conduct of Defendants Loughran and Dupor. As a fourth cause of action, Plaintiff asserted that her privacy was invaded by the publication of the fact that she was receiving psychiatric care.

Plaintiff's fifth cause of action alleged conversion based upon the alleged examination and misplacement of Plaintiff's personal items during her absence from the workplace. Finally, as her sixth and seventh causes of action, Plaintiff alleged that Southern Bell negligently supervised and retained the defendant employees.

Following the filing of Defendants' brief in opposition to Plaintiff's motion to remand, in which they argued that Plaintiff's state law claims were preempted by Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, Plaintiff filed her third action in state court. This action realleged Plaintiff's first intentional infliction of emotional distress claim, her conversion claim, and her invasion of privacy claim based upon the alleged publication of her psychiatric treatment. However, Plaintiff added another invasion of privacy claim alleging wiretapping of her home and work telephones, and she eliminated the negligent retention and supervision of employees' claims. Nowhere in Plaintiff's third cause of action is there any mention of the collective bargaining agreement in force at Southern Bell. Defendants contend, however, that notwithstanding this absence of reference to the agreement, the claims of the third cause of action are also preempted by the LMRA.

## DISCUSSION

In recent years both the Supreme Court and various circuit courts have considered the question of when state law causes of action are preempted by Section 301 of the LMRA. While the guidelines in these cases are not always easy to apply, the current standard requires courts to look at whether the state tort claim is "inextricably intertwined" with a consideration of the terms of the labor contract. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985). If the state tort law attempts to define the meaning of the contractual relationship, then the state tort law is preempted. *Id.* Conversely, if the right involved is a "non-negotiable state-law" right independent of any right established by the contract, then it is not preempted. *Id.; accord Miller v.*

*AT & T Network Systems,* 850 F.2d 543, 546–48 (9th Cir.1988).

At the hearing on this motion, Plaintiff contended that the Supreme Court's decision in *Lingle v. Norge Div. of Magic Chef, Inc.,* —— U.S. ——, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), substantially altered the scope of preemption under Section 301. Specifically, Plaintiff contended that *Lingle* mandates preemption only where a resolution of the issue in question requires the interpretation of the terms of a collective bargaining agreement rather than where the issue's determination is merely intertwined with the agreement. However, as pointed out by the Ninth Circuit in its recent decision in *Newberry v. Pacific Racing Ass'n,* 854 F.2d 1142 (9th Cir.1988), the difference between *Lingle* and *Allis–Chalmers* appears one of semantics rather than substance, *i.e.,* whether resolution of a claim requires the interpretation of a collective bargaining agreement or substantially depends upon an analysis of the terms of the labor contract, the result regarding preemption should be the same. However, this court will follow the arguably stricter standard of *Lingle* "without indicating or suggesting that the tests [in *Allis–Chalmers* and *Lingle*] do in fact differ." *Newberry,* 854 F.2d at 1147.

### A. *Intentional Infliction of Emotional Distress*

■ At the hearing on the motion to remand, counsel for all parties substantially agreed that if Defendants' conduct crossed a line beyond which it would not be tolerated in a civilized society, preemption would not be appropriate. *See, e.g., Keehr v. Consolidated Freightways of Delaware, Inc.,* 825 F.2d 133 (7th Cir.1987) (no preemption found where plaintiff had a verbal and physical altercation with his supervisor during which the supervisor made sexually explicit remarks about plaintiff's wife); *but cf. Miller v. AT & T Network Systems,* 850 F.2d 543, 551 (9th Cir.1988) (" 'farthest reaches of socially tolerable behavior' " is not an independent, nonnegotiable barometer of conduct; hence, preemption of intentional infliction of emotional distress claim

was appropriate even where state anti-discrimination law was violated). The parties differ, however, concerning whether the line was crossed in this particular case. While Plaintiff claims that alleged sexist remarks and belittling comments concerning her mental health went beyond the type of conduct which a civilized society should tolerate, Defendants claim that, since the tort of intentional infliction of emotional distress requires an evaluation of the conduct at issue in the context of the circumstances under which it occurred, Plaintiff's claim cannot be resolved without reference to the rights and obligations under the collective bargaining agreement.

While the court is sympathetic to Plaintiff's apparent exposure to sexist remarks from Loughran as evidenced by Southern Bell's own documents investigating his conduct, the court finds that since the propriety of Defendants' conduct may not be assessed by an independent, nonnegotiable standard under North Carolina law [1] and the thrust of Plaintiff's claim concerns disputes clearly involving working conditions and terms of employment, the claim is preempted under Section 301. Specifically, Plaintiff's allegations that Defendants harassed her by monitoring her work telephone, controlling her personal time during breaks at Southern Bell, making efforts to control her outside business matters, and taking her personal belongings stored on company property all concern terms and conditions of her employment. As such, reference to the collective bargaining agreement and the attendant "common law" of the workplace, *see United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578–81 (1960), is necessary to determine the extent to which Defendants' alleged conduct may or may not have been outrageous under the circumstances. *See Miller*, 850 F.2d at 549 (as claims for intentional infliction of emotional distress require assessment of the reasonableness of the behavior allegedly causing the distress, when a court must decide whether an employer acted reasonably, "the possibility that the [collective bargaining agreement] permitted the ... behavior would strongly support the claim of reasonableness, unless the state had imposed some specific standard disallowing agreements that permit such behavior").

In addition, the court also notes that nowhere does Plaintiff allege that any of the individual Defendants were acting outside the scope of their employment, and in her first two actions she actually alleged that the Defendants were at all times acting within the scope of their employment. Furthermore, references were originally made to the collective bargaining agreement and were omitted from the third action only after Defendants raised the issue of preemption in their brief in opposition to Plaintiff's motion to remand. Both of these factors, particularly the absence of any allegation that Defendants acted outside the scope of their employment, further support the court's conclusion that this claim is preempted by the LMRA.

### B. The Invasion of Privacy Claims

1. Invasion based on publication of true but embarrassing facts

As one of her causes of action based upon invasion of privacy, Plaintiff contends that, when she spoke to Southern Bell employees concerning her need to undertake psychiatric treatment, she was promised that her treatment would remain confidential. However, Plaintiff contends that Southern Bell employees breached this promise by telling Plaintiff's co-workers that she was seeing a psychiatrist. Defendants respond that even if such publication took place, it may have been permitted or even required by the terms of the various benefit plans under which Plaintiff received treatment. Thus, Defendants contend that the propriety of the alleged communication cannot be determined without a reference

---

**1.** To establish intentional infliction of emotional distress, North Carolina law requires that the plaintiff show either extreme and outrageous conduct which is intended to cause and which does cause severe emotional distress or reckless indifference to the likelihood that the conduct will cause such distress. *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981).

to the plans provided under the collective bargaining agreement.[2]

Plaintiff attempts to find support for her assertion in the case of *Paradis v. United Technologies*, 672 F.Supp. 67 (D.Conn. 1987). In *Paradis*, Mr. Paradis informed the defendant company of his drug addiction pursuant to defendant's alleged representation that it would provide all employees with assistance for addiction and that the employee would not be discriminated or retaliated against for having previously abused drugs. With the defendant's help, Paradis entered and successfully completed a drug treatment program. When he returned to work, Paradis requested that he be relocated to avoid confronting fellow employees with whom he had previously used drugs.

Rather than keeping Paradis' drug use confidential, however, defendant alerted its own security department and state law enforcement authorities of Paradis' problem and also requested that Paradis assist the company and law enforcement in apprehending other employees using drugs. Paradis refused to cooperate and was allegedly discharged because of this refusal.

Based on the defendant's actions, Paradis and his wife claimed that they suffered emotional distress, that Paradis' termination contravened public policy and constituted tortious wrongful discharge, that defendant breached its promise of confidentiality, that defendant disciplined and eventually terminated Paradis because he exercised his rights to privacy and free speech, and that defendant's conduct as to Paradis and his wife constituted fraud, deceit, and intentional or negligent misrepresentation. In response to these charges, defendant contended that Paradis' employment was covered by a collective bargaining agreement and that his rights were determinable only under the Labor Management Relations Act.

While the court sided with the defendant with regard to Paradis' claims of tortious wrongful discharge and emotional distress based upon his termination, the court determined that Paradis' claims of emotional distress based upon mistreatment of his drug problem, breach of confidentiality, violation of his rights to privacy and free speech, and fraud, deceit, and misrepresentation were not preempted. With regard to the confidentiality issue in particular, the court noted that, although defendant was correct that the issue called into question the propriety of Paradis' discharge, "Defendant [was] incorrect in concluding that that fact thereby preempt[ed] Plaintiffs' claims." *Id.* at 71. The court noted that the plaintiffs were not claiming that the defendant informed Paradis that drug use would not be a basis for the discharge but rather that the defendant would not terminate him if he confided in the company regardless of whether drug use would be considered just cause under the labor contract for his termination. "Under that construction of the complaint, Plaintiffs need only show that Paradis' termination was contrary to what Defendant promised, not that it was unjust. In response Defendant would merely have to show that it made no such promise. Neither party would have to resort to construing the contract." *Id.*

Here, Plaintiff claims that since she was also promised confidentiality regarding her psychiatric care yet her situation was revealed to fellow employees, the resolution of her claim depends upon a determination of whether Defendants breached their promise of confidentiality regardless of what the collective bargaining agreement provides. However, in *Paradis* there was no dispute that the defendants told security officers within the company as well as law enforcement officials outside the company of Paradis' drug use, and there was also no dispute that these individuals played no role in rehabilitating Paradis. In the present case, however, Defendants claim

---

**2.** Plaintiff notes that in Defendants' pleadings regarding the first two lawsuits they admitted that the Employee Assistance Program under which Plaintiff sought care was not a benefit. However, the fact that the program providing

the opportunity or right to receive care was not a benefit does not mean that benefit plans in the contract were not necessary to actually provide for and fund Plaintiff's care.

that the various benefit plans in force at Southern Bell will have to be evaluated to determine what type of communications might have been permitted or even required so that treatment could be arranged for Plaintiff. For example, if Southern Bell made a permitted disclosure under a plan and information on Binkley's mental health leaked from sources administering the plan, the company would not have breached its collective bargaining agreement nor violated Plaintiff's right of privacy. Therefore, resolution of Binkley's claim will depend upon the interpretation of benefit plans authorized under the collective bargaining agreement and her claim is preempted by Section 301.

### 2. The wiretapping claims

■ In her third cause of action, also an invasion of privacy count, Plaintiff claims that on various occasions both her work and home telephones were monitored without her consent. Defendants deny that they engaged in such activity but contend that, with regard to the alleged monitoring at work, the court will have to examine the collective bargaining agreement to determine whether or not such monitoring would be a permitted exercise of Defendants' rights under the agreement.[3] Defendants also contend that Plaintiff's theory concerning the alleged home telephone monitoring is that Defendants were trying to match phone numbers called from her home and work phones to determine if she was conducting her trucking business at work; thus, the alleged monitoring would relate to Plaintiff's activities at work and would also be preempted.

The court agrees that whether Plaintiff's telephone was monitored at work is a dispute that falls under the terms of the collective bargaining agreement. Such alleged activity apparently occurred after the company became suspicious that Plaintiff was conducting her personal business on company time, and the company's investigation and concern over such activity clearly relates to working conditions under the collective bargaining agreement. Regarding Plaintiff's home telephone, however, both federal and state law proscribe such conduct. See 18 U.S.C. § 2511; N.C.Gen. Stat. § 14–155. Plaintiff's right to be free of unauthorized wiretapping of her telephone is in the nature of a non-negotiable right as contemplated by *Allis–Chalmers*. Thus, Plaintiff may pursue her invasion of privacy claim based on alleged wiretapping under state law.[4]

■ However, notwithstanding the fact that the home wiretapping is not dependent upon an interpretation of the collective bargaining agreement, such claim is still removable under 28 U.S.C. § 1441(b) because Plaintiff's claims are such that she "would ordinarily be expected to try them all in one judicial proceeding" and they "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Therefore, the court will exercise its pendent jurisdiction over the state law claim.

### C. Trespass/Conversion Claim

■ As Plaintiff's final cause of action, she asserts that on various occasions Defendants searched through her personal belongings placed in a desk at Southern Bell and also misplaced these belongings. Once again Defendants contend that "the employer's right to have access to these areas and its right to remove an employee's personal properties from such area as well, necessarily, involve consideration of an interpretation of the collective bargaining agreement." (Defendants' Brief in Opposition to Plaintiff's Motion for Remand, p. 13).

The court agrees with Defendants that the company's right of access to its employee's property placed in the workplace is a matter to be resolved under the collective bargaining agreement. *See Adolph Coors*

---

**3.** Defendants note that monitoring could include such activities as reviewing records of numbers called from the Plaintiff's work station.

**4.** The court makes no assessment of the merits of Plaintiff's claims on this issue.

774

*Co. v. Wallace,* 115 L.R.R.M. (BNA) 3100 (N.D.Cal.1984) ("terms or conditions of employment" includes company policy regarding search and seizure). Therefore, this claim is also preempted by Section 301.

An order in accordance with this memorandum opinion shall be filed contemporaneously herewith.

### ORDER

In accordance with the memorandum opinion filed contemporaneously herewith,

IT IS HEREBY ORDERED that Plaintiff's motion to remand be, and the same hereby is, DENIED.