Eve ELLIS

v.

**Karen LLOYD; District 1199, New England Health Care Employees Union, SEIU, AFL–CIO.**

Civ. No. 3:93–1655 (JAC).

United States District Court, D. Connecticut.

Nov. 17, 1993.

Otto P. Witt, Wethersfield, CT, for plaintiff.

Michael E. Passero, Milford, CT, for defendants.

## RULING ON PLAINTIFF'S MOTION TO REMAND AND DEFENDANTS' MOTION TO DISMISS

JOSÉ A. CABRANES, Chief Judge.

The question presented is whether the plaintiff's state law claims of intentional infliction of emotional distress and intentional interference with business expectations are pre-empted by Section 301(a) of the Labor Management Relations Act, 29 U.S.C. §§ 141 *et seq.* ("LMRA"). Pending before the court are the plaintiff's Motion to Remand (filed September 24, 1993) and the defendants' Motion to Dismiss (filed September 14, 1993).

### BACKGROUND

The plaintiff was at all relevant times employed by the Sunrise Healthcare Corporation ("Sunrise Healthcare") as the assistant director of nursing at the Waterford Convalescent Home in Waterford, Connecticut. The defendants include District 1199, New England Health Care Employees Union, SEIU, AFL–CIO ("District 1199"), the certified collective bargaining representative for bargaining unit employees of Sunrise Healthcare working at the Waterford Convalescent Home; and Karen Lloyd, an employee of Sunrise Healthcare and a union delegate for District 1199. The plaintiff alleges that Lloyd maliciously filed—and that District 1199 maliciously pursued—numerous griev-

ances against the plaintiff which were intended solely to harass her and which interfered with her employment. The plaintiff further alleges that these grievances were without merit and that the defendants' actions were extreme and outrageous.

The plaintiff filed her complaint in Connecticut Superior Court at the Judicial District of New London with a return date of August 24, 1993. The defendants filed a notice of removal to this court on August 18, 1993 and a motion to dismiss on September 14, 1993, asserting that Section 301(a) of the LMRA, 29 U.S.C. § 185(a) ("Section 301"), pre-empts the plaintiff's state law claims. The plaintiff filed a motion to remand on September 24, 1993, maintaining that removal is not proper since her state law claims are not covered by Section 301.

## DISCUSSION

■ Section 301 provides that

[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

Accordingly, for the district court to have original jurisdiction over this action (and for removal to be proper), this case must be (1) between an employer and a labor organization, and (2) for violation of a contract.[1]

If these two criteria are satisfied, Section 301 would not only confer jurisdiction upon this court; it would also pre-empt the plaintiff's state law claims. *See Textile Workers v. Lincoln Mills*, 353 U.S. 448, 456–57, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957) (concluding that Section 301 is more than merely

a jurisdictional grant, and that "the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws"). Consequently, if Section 301 applies, the plaintiff's claims—which are exclusively grounded in state law—must be dismissed.

The plaintiff bases her motion to remand, and therefore her opposition to the defendants' motion to dismiss, on two assertions: (1) that the plaintiff is not an "employee" within the meaning of the LMRA; and (2) that the plaintiff's claims for relief do not depend upon the construction of a collective bargaining agreement. The court finds that, in the circumstances presented here, the first argument is irrelevant and the second is unpersuasive. The court therefore concludes that the plaintiff's state law claims are covered, and hence pre-empted, by Section 301. Accordingly, the plaintiff's motion to remand must be denied, and the defendants' motion to dismiss must be granted.

### I.

■ The plaintiff first contends that she is not an "employee" under 29 U.S.C. § 152(3),[2] but, rather, that she is a "supervisor" under 29 U.S.C. § 152(11).[3] The defendants do not dispute this contention and neither does the court. The fact that the plaintiff is a "supervisor" instead of an "employee," however, does not support her position that her claims do not fall within the scope of the LMRA—quite to the contrary.

As a supervisor, the plaintiff had the "authority" to act "in the interest of the employer." 29 U.S.C. § 152(11). Indeed, the plaintiff states in her Memorandum (dated Sept. 23, 1993), at unnumbered page 3, that "[s]he had the authority to hire, discipline and conduct other necessary functions...." Mean-

1. It is nowhere disputed that District 1199 is "a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a).

2. 29 U.S.C. § 152(3) provides that the term employee "shall not include ... any individual employed as a supervisor...."

3. 29 U.S.C. § 152(11) defines the term "supervisor" as

any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

while, 29 U.S.C. § 152(2) defines the term "employer" as "any person acting as an agent of the employer, either directly or indirectly. . . ." From this brief analysis, it is apparent that, for purposes of the LMRA, the plaintiff is actually an "employ*er.*" *See, e.g., Jay Foods, Inc. v. N.L.R.B.,* 573 F.2d 438, 445 (7th Cir.) (supervisor with the authority, at least, to fire employees qualifies as an "employer" under the LMRA), *cert. denied,* 439 U.S. 859, 99 S.Ct. 176, 58 L.Ed.2d 167 (1978).

Inasmuch as District 1199 is a "labor organization," *see* Complaint at ¶ 3, this suit is clearly between an "employer" and a "labor organization." *See* 29 U.S.C. §§ 152(2), (5). Accordingly, this suit falls within the scope of Section 301 if it is for a violation of a contract.

## II.

### A.

■ The plaintiff, however, maintains that this is not a suit for a violation of a contract since her state law claims do not turn on the meaning of any collective bargaining agreement. This argument is unpersuasive. As an initial matter, it is important to note that Section 301 does not pre-empt only those state law claims founded directly on rights created by collective bargaining agreements. Section 301 also pre-empts those state law claims which are " 'substantially dependent on analysis of a collective-bargaining agreement.' " *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 394, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (*quoting Electrical Workers v. Hechler,* 481 U.S. 851, 859 n. 3, 107 S.Ct. 2161, 2167 n. 3, 95 L.Ed.2d 791 (1987)).

The key question, then, is whether the state law claims at issue require the interpretation of a collective bargaining agreement.

[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principals as there are States) is pre-empted and federal labor law principles— necessarily uniform throughout the Na-

tion—must be employed to resolve the dispute.

*Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 405–06, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988).

Even claims not based on contract law may be pre-empted by Section 301.

If the policies that animate Section 301 are to be given their proper range . . . the preemptive effect of Section 301 must extend beyond suits alleging contract violations. . . . [S]tate law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by the agreement of the private parties, are pre-empted by those agreements. . . . If the state law right purports to define the meaning of the contract relationship, that law is pre-empted.

*Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 210, 213, 105 S.Ct. 1904, 1910, 1912, 85 L.Ed.2d 206 (1985).

■ Obviously, it is for the federal courts to determine when state tort claims are pre-empted by Section 301. "While the nature of the state tort is a matter of state law, the question of whether the . . . tort is sufficiently independent of federal contract interpretation to avoid pre-emption is, of course, a question of federal law." *Id.* at 213–14, 105 S.Ct. at 1912–13. The answer to this question is determined by whether the state

confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract.

*Anderson v. Coca Cola Bottling Co.,* 772 F.Supp. 77, 82 (D.Conn.1991) (citations omitted).

### B.

■ According to the defendants, resolution of the plaintiff's state tort claims—for intentional infliction of emotional distress and intentional interference with business expectations—necessarily depends upon the interpretation of the grievance provisions of the collective bargaining agreement between the

defendant union and Sunrise Healthcare. The court agrees.

The thrust of the plaintiff's claims concern disputes which clearly involve working conditions and terms of employment covered by the collective bargaining agreement. In order for the plaintiff to succeed on her claim of intentional infliction of emotional distress, for example, she would have to show, *inter alia,* that the defendants' conduct was extreme and outrageous.[4] The court, however, could not determine whether the grievances filed against the plaintiff by defendant Lloyd and ratified by District 1199 constituted extreme and outrageous conduct without first determining what types of grievances are permitted under the collective bargaining agreement. In other words, there is simply no independent or "nonnegotiable" state law standard—outside the agreement—for determining whether the grievances filed against the plaintiff were improper.

The plaintiff's second claim—for intentional interference with business expectations—is arguably even more closely intertwined with the collective bargaining agreement. The plaintiff cannot realistically suggest that this claim, which also hinges on the merit of the grievances filed against her and which is specifically grounded in the terms, conditions, and expectations of her employment, does not require any reference to the collective bargaining agreement.

The plaintiff asserts that her claims are not covered by the LMRA because she does not have any rights under the collective bargaining agreement. While it may well be true that the plaintiff does not have any rights under the agreement, the *defendants* certainly do, and the scope and nature of these rights have a direct bearing on the validity of the defendants' actions.

Inasmuch as the plaintiff's claims clearly require the construction and application of a collective bargaining agreement, they must be pre-empted under Section 301. It is not surprising that courts facing similar claims have repeatedly applied Section 301. *See, e.g., Anderson,* 772 F.Supp. at 82 (emotional distress claim pre-empted because claim depended on whether warnings issued to plaintiff were proper under collective bargaining agreement); *Johnson v. Beatrice Foods Co.,* 921 F.2d 1015, 1019–21 (10th Cir.1990) (emotional distress claim pre-empted because claim depended on whether discipline, suspension and discharge of plaintiff were permitted by collective bargaining agreement); *Brown v. Southwestern Bell Telephone Co.,* 901 F.2d 1250, 1256 (5th Cir.1990) (emotional distress claim pre-empted because claim depended on whether plaintiff's discharge was permitted by collective bargaining agreement); *Harris v. Alumax Mill Products, Inc.,* 897 F.2d 400, 403 (9th Cir.) (emotional distress claim pre-empted because claim involved propriety of employer's attendance policy, which resulted in plaintiff's discharge, under the collective bargaining agreement), *cert. denied,* 498 U.S. 835, 111 S.Ct. 102, 112 L.Ed.2d 73 (1990); *Johnson v. Anheuser Busch, Inc.,* 876 F.2d 620, 624 (8th Cir.1989) (emotional distress claim pre-empted because claim depended on whether employer's investigation and discharge of plaintiff were warranted under collective bargaining agreement); *Miller v. AT & T Network Systems,* 850 F.2d 543, 549 (9th Cir.1988) (emotional distress claim pre-empted because claim hinged on whether employer's re-assignment and discharge of plaintiff was reasonable under the collective bargaining agreement); and *Binkley v. Loughran,* 714 F.Supp. 768, 771 (M.D.N.C.1988) (emotional distress claim pre-empted because claim turned on whether employer's conduct violated collective bargaining agreement), *aff'd w/o op'n,* 940 F.2d 651 (4th Cir.1991).

The claims asserted here are significantly different from tort claims which have escaped the pre-emptive sweep of Section 301.

---

4. In order to prevail on a claim for intentional infliction of emotional distress,

> four elements must be established. It must be shown: (1) that the [defendant] intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) *that the conduct was extreme and outrageous;* (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.

*DeLaurentis v. City of New Haven,* 220 Conn. 225, 266–67, 597 A.2d 807 (1991) (citations omitted) (emphasis supplied).

See, e.g., Lingle, 486 U.S. at 406–10, 108 S.Ct. at 1881–83 (claim for retaliatory discharge which turned on the motivations of the employer irrespective of collective bargaining agreement); Caterpillar, 482 U.S. at 394–95, 107 S.Ct. at 2430–31 (claim based on an *individual* employment contract entirely separate and independent from the terms of a collective labor agreement); Farmer v. United Brotherhood of Carpenters and Joiners, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) (claim based on alleged physical intimidation and threats of violence); Hanks v. General Motors Corp., 906 F.2d 341 (8th Cir.1990) (claim based on requirement that plaintiff work under the supervision of someone who had been arrested for sexually molesting plaintiff's daughter); Krashna v. Oliver Realty, Inc., 895 F.2d 111, 115 (3d Cir. 1990) (claim based on employer's conduct in retaliation for plaintiff's "vindication of interests independent of those embodied in the collective bargaining agreement," namely, the filing for benefits under the Pennsylvania Workmen Compensation Act); O'Shea v. Detroit News, 887 F.2d 683 (6th Cir.1989) (claim based on age and handicap discrimination); Keehr v. Consolidated Freightways of Delaware, Inc., 825 F.2d 133 (7th Cir.1987) (claim based on alleged policy of employer that expressly encouraged supervisors to make crude and vulgar remarks to employees in order to provoke fights and thereby justify discharge); and Binkley, 714 F.Supp. at 773 (claim based on unauthorized wiretapping of an employee's home telephone, conduct which is categorically proscribed by law irrespective of collective bargaining agreement).

As the foregoing analysis demonstrates, courts have declined to pre-empt state tort claims only where such claims do not depend upon the construction of a collective bargaining agreement. Here, to the contrary, the court simply cannot escape the conclusion that the resolution of the plaintiff's state law claims *requires* the interpretation of the collective bargaining agreement between District 1199 and Sunrise Healthcare. As a result, such claims are pre-empted by Section 301. If the plaintiff wishes to pursue a cause of action against the defendants, she must base her claims exclusively on federal law. See Lingle, 486 U.S. at 405–06, 108

S.Ct. at 1881; Allis–Chalmers, 471 U.S. at 209–10, 105 S.Ct. at 1910–11.

Accordingly, the plaintiff's motion must be denied and the defendants' motion must be granted.

## CONCLUSION

Based on the record, and for the reasons stated above, it is hereby ORDERED that:

1. The plaintiff's Motion to Remand (filed September 24, 1993) is hereby DENIED.

2. The defendants' Motion to Dismiss (filed September 14, 1993) is hereby GRANTED. This action is hereby DISMISSED with prejudice.

It is so ordered.