Melvin SMITH, Plaintiff-Appellant,

v.

BABCOCK & WILCOX COMPANY, RE-
FRACTORIES DIVISION, AUGUSTA,
GEORGIA, et al., Defendants-Appellees.

No. 82–8654.

United States Court of Appeals,
Eleventh Circuit.

March 16, 1984.

Jack L. Cooper, Augusta, Ga., for plaintiff-appellant.

J. Thomas Kilpatrick, Atlanta, Ga., for Babcock & Wilcox Co.

Michael C. Garrett, Augusta, Ga., for Local 1137.

Before VANCE and CLARK, Circuit Judges, and SWYGERT *, Senior Circuit Judge.

PER CURIAM:

Appellant Smith complains of the grant of summary judgment by the district court in favor of the appellees Babcock & Wilcox Company, appellant's employer, and Industrial Maintenance and Production Workers Local No. 1137, the union to which appellant belonged. In the district court, Smith sought relief pursuant to § 301(a) of the Labor Management Relations Act, 1947, 29 U.S.C. § 185(a). Our independent review of the evidence viewed in the light most favorable to the plaintiff and our study of the applicable law convinces us that the district court's decision, 549 F.Supp. 190, was correct and we affirm.

Appellant raises two issues on appeal, that he is entitled to bring a § 301 action against the union and the company because the facts of the case reveal a serious flaw in the collective bargaining process and that he has a right to present his freedom of speech claim with regard to his expulsion from the union in this suit. In order to answer these arguments, it is necessary to understand the sequence of events which led to this appeal. After Smith's discharge by his employer Babcock on March 24, 1980, he sought reinstatement pursuant to the collective bargaining agreement between the employer and the union which provided a grievance and arbitration procedure for the settlement of employee-employer disputes. When Smith reported his discharge to the union, it immediately filed a grievance against the employer which led to Smith's reinstatement, in approximately two weeks, on a different job. Because the new assignment was on a different shift and involved more arduous work, Smith again sought help from the union in remedying what he considered unfair treatment on the part of the employer. As a result, the union requested arbitration on the issue of whether the company violated the collective bargaining agreement by transferring Smith to a different department. An arbitration hearing was held on November 10, 1980. On March 13, 1981, the arbitrator issued his decision requiring the company to reinstate Smith to his former position. In response, the company notified the union that Smith's job had been abolished. The company then requested the union to resubmit to arbitration the issue of what job Smith should be given. On March 17, 1981, the plaintiff began to picket the union, carrying a sign which read "Union Unfair to Union Member." On March 27, 1981, the trial board met and recommended the expulsion of Smith because of his picketing. On April 7, 1981, the union membership voted to expel Smith. Rather than resubmit the issue of another job for Smith to arbitration, the union filed suit on May 11, 1981 in district court to enforce the arbitrator's award of March 13. On May 22, 1981, the district court entered an order remanding the award back to the arbitrator for a determination of whether it was impossible for the company to reinstate Smith to his former job, whether the company had the right under the collective bargaining agreement to abolish the job, whether the company's position on this issue was in good faith and what position Smith should be given. When neither counsel for the union nor counsel for the company arranged for the resubmission of the matter in accordance with its order, the district court entered

---

* Honorable Luther M. Swygert, U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

another order on February 19, 1982 compelling the parties to submit the questions detailed in the May 22 order to the arbitrator. On May 15, 1982, the arbitration was finally concluded when the arbitrator rendered his second award which resulted in Smith's reinstatement to his previous job on the same shift with no loss of seniority and full reimbursement for his loss of earnings. Babcock complied with the arbitrator's decision. The district court then entered an order on August 13, 1982 which provided for the enforcement of the arbitrator's second award.

On August 6, 1981, before the matter had been resubmitted by counsel to the arbitrator, Smith sued the union and the employer claiming bad faith, the union for ineffective representation on the part of the union, and the employer for delaying the arbitration proceeding, abolishing his original job and breaching the collective bargaining agreement. Recognizing the exclusiveness of the remedy provided by the arbitration procedure, Smith nevertheless sought damages, relying on *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

 Prior to enactment of the National Labor Relations Act in the 1930s, an employee had no remedy against an employer for a wrongful discharge unless the employer had a personal contract with the employer which the employer had breached. Passage of that Act gave legal recognition to the status of a labor union to represent its members in a dispute with an employer. Later, as articulated in 29 U.S.C. § 171, a policy was established providing for the final adjustment of grievances between employees and employers through the use of collective bargaining, conciliation, arbitration, and other prescribed remedies. Congress declared in § 203(d), 29 U.S.C. § 173(d), that final adjustment of disputes by a method agreed upon by the parties was a desirable method for settlement of grievance disputes. That congressional policy "can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." *United Steelworkers v. American Mfg. Co.,* 363

U.S. 564, 566, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403, 1404 (1960). When a collective bargaining agreement provides a mechanism for grievance settlement through binding arbitration, a decision by the arbitrator may not normally be reviewed in the federal courts. *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424, 1429 (1960). When grievance disputes proceed to the arbitration provided for in the collective bargaining agreement, however, the union has the obligation to fairly represent the interests of the employee. If the union breaches that duty of fair representation, the finality rule regarding arbitration decisions is lifted and so is the bar to federal court review. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 571, 96 S.Ct. 1048, 1059–60, 47 L.Ed.2d 231, 245 (1976); *Harris v. Schwerman Trucking Co.,* 668 F.2d 1204, 1206 (11th Cir.1982).

 *Hines* allows an employee to go behind a final and binding award under a collective bargaining agreement and seek relief against his employer and union only if he demonstrates that his union has breached its duty. *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 61, 101 S.Ct. 1559, 1563, 67 L.Ed.2d 732, 739 (1981). The indispensable predicate for a § 301 action, therefore, is a showing that the union has breached its statutory duty of fair representation. *See Diaz v. Schwerman Trucking Co.,* 709 F.2d 1371, 1376 (11th Cir.1983). Such a showing can be made by proving that the union's handling of a grievance is arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842, 857 (1967); *Harris, supra,* 668 F.2d at 1206. Smith points primarily to the delay by the union in initially taking his claim to arbitration and later in resubmitting the grievance to the arbitrator (according to the district court's May 22 order) to demonstrate a breach of the union's duty of fair representation.

We note that a union is allowed considerable latitude in its representation of employees. The grievance and arbitration process is not conducted in a judicial forum and union representatives are not held to strict standards of trial advoca-

cy.... Cases are uniform in holding that neither negligence on the part of the union nor a mistake in judgment is sufficient to support a claim that the union acted in an arbitrary and perfunctory manner.... The union is accorded a "wide range of reasonableness" in the exercise of its discretion, and although it is circumscribed by a duty to act with "complete good faith and honesty of purpose," *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953), the employee's burden "remain[s] a substantial one." *Hines,* 424 U.S. at 570, 96 S.Ct. at 1059....

*Harris,* 668 F.2d at 1206 (citations omitted).

■ *Hines* makes it clear that any determination of whether a union has breached its duty of fair representation must consider the manner in which the union has handled the grievance. 424 U.S. at 569, 570, 96 S.Ct. at 1058–59, 47 L.Ed.2d at 244. If we focus on the union's conduct during the course of its representation of Smith, we find adequate representation by the union. *Harris,* 668 F.2d at 1206. The first grievance was filed the day after his discharge and Smith was reinstated within two weeks. When the job he was transferred to was unsatisfactory, the union went to arbitration on the issue of whether he would be transferred and won an arbitration award for Smith. It was the company who claimed that the award could not be met since Smith's job had been abolished. The union went to district court to enforce the arbitral order. There is no question that the arbitration proceeding was irresponsibly delayed by the failure of the union and the company to resubmit the claim to the arbitrator once the district court had handed down its May 22 order. But that same court found that although the union might not have been enthusiastic in its pursuit of the claim, its conduct did not rise to the level of being arbitrary, discriminatory or in bad faith. Nothing in the record leads us to dispute this finding. The union did resubmit the matter to the arbitrator who then found for Smith. Notwithstanding what Smith construes to be ineffective representation on the part of the union, he obtained full reinstatement to his previous shift and position, and compensation for lost wages. Although Smith contends that he has not received all the damages to which he is entitled, he has not proven the union's breach which he must to recover under § 301. Smith can cite no precedent for a claim of unfair representation where the grievance procedure ended, as it has here, in the favor of the employee. Smith has failed to meet the burden for disturbing the finality of the arbitration decision. "To prevail against either the company or the Union, [employee] must not only show [his] discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union." *Hines,* 424 U.S. at 570–71, 96 S.Ct. at 1059, 47 L.Ed.2d at 245.

■ There is no merit to Smith's contention that he can sue the union under § 301 for wrongful discharge from the union. Actions under § 301 are confined to "suits for violation of contracts between an employer and a labor organization representing employees." Instead, Smith's remedy is either for an unfair labor practice under 29 U.S.C. § 158(b) which states:

It shall be an unfair labor practice for a labor organization or its agents—

(2) ... to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership

29 U.S.C. § 158(b)(2), or alternatively for a violation of his right to free speech pursuant to 29 U.S.C. § 411 for which breach a cause of action against a union can be sustained and jurisdiction of the federal courts invoked pursuant to 29 U.S.C. § 412.

■ Smith, in his brief in opposition to the motion for summary judgment, asserted that the action was brought under § 301 of the National Labor Relations Act, 29 U.S.C. § 185. He further stated:

I would like to re-emphasize that this is an *Anchor Motor Freight* case having to do with the direct right of an employee to file suit against the union and the em-

ployer under certain circumstances. The right of free speech and the fact that the union member was discharged from the union are only ancillarily involved.

At no point did Smith seek relief in an action under 29 U.S.C. § 412. He relates the union expulsion as support for the claim of breach of the duty of fair representation by the union in the arbitration proceedings. His expulsion did occur before the final resolution of the arbitration proceedings. Nevertheless, the union continued to represent Smith's interests. The duty of fair representation extends to all union dealings with the employer. The duty of fair representation is not called into play, however, regarding conduct which affects only an individual's relationship within the union structure. *Bass v. International Brotherhood of Boilermakers*, 630 F.2d 1058, 1063 (5th Cir.1980).

Smith's cause of action was brought pursuant to 29 U.S.C. § 185 which limits federal court jurisdiction to "suits for violation of contracts." Smith's ancillary claim with respect to expulsion from the union allegedly in violation of his free speech rights is clearly not within the ambit of this *statute. Nothing that this court said in Fulton Lodge No. 2 of the International Association of Machinists v. Nix*, 415 F.2d 212 (5th Cir.1969), is to the contrary.

Finding that Smith has no cause of action under § 301, we need not reach the issue of damages. The judgment of the district court is

AFFIRMED.