Charles–Claude RASHEED, Plaintiff,

v.

**INTERNATIONAL PAPER CO., Defendant.**

Civ. A. No. 92–0206–RV–C.

United States District Court,
S.D. Alabama, N.D.

June 25, 1993.

Collins Pettaway, Selma, AL, for plaintiff.

J. Cecil Gardner, Christopher Krafchak, Mobile, AL, for movant.

William Gardner, Birmingham, AL, for defendant.

### *ORDER*

VOLLMER, District Judge.

This matter is before the court on defendant's timely-filed "motion for partial summary judgment" (tab 27; *see also* tab 28), "plaintiff's objection and response to defendant's motion for summary judgment" (tab 29), and defendant's "reply brief" (tab 31). After due and proper consideration, the court concludes that defendant's motion is due to be, and hereby is, **GRANTED in part and DENIED in part** for the reasons that follow.

### *Overview*

This action was brought by Charles–Claude Rasheed, a former employee of the sole defendant, International Paper Company, to redress alleged discrimination in employment and recover for an alleged breach of contract. Plaintiff maintains that he was discriminated against because of his race (black), his religion (Muslim), and in retaliation for filing a complaint against the defendant with the EEOC. He also contends that the defendant breached a contract that allegedly existed between it and Rasheed by taking into consideration portions of his disciplinary history when making the decision to discharge him.

The complaint in this case presently consists of five counts,[1] only three of which are

---

1. The plaintiff previously moved for and was granted permission to dismiss counts three and four of the complaint, which respectively alleged discrimination in violation of "the First, Fifth, Thirteenth and Fourteenth Amendments of the United States Constitution" and in violation of the Constitution of the State of Alabama.

thoroughly addressed [2] in defendant's motion for partial summary judgment.[3] Those three counts are: (1) count five, alleging a breach of contract by IP;[4] (2) count six, alleging intentional infliction of emotional distress by IP;[5] and (3) count seven, alleging negligence by IP.[6] Defendant's motion squarely draws into question the factual and legal bases of those claims.

Defendant contends that counts five, six, and seven of the complaint are due to be dismissed. More specifically, defendant asserts that each count essentially challenges actions that allegedly were undertaken by it pursuant to a collective bargaining agreement and, as such, each is preempted by the Labor Management Relations Act, 29 U.S.C. § 185. Continuing, defendant maintains that each of those claims is not sustainable, as a

2. Defendant also maintains that the references in counts one and two to "the First, Fifth, Thirteenth and Fourteenth Amendments to the U.S. Constitution" should be stricken as duplicative of count three, which the plaintiff previously voluntarily dismissed, and, alternatively, since plaintiff's "complaint is not maintainable under the Constitution." Plaintiff concedes that the aforesaid references are due to be stricken. Accordingly, that aspect of the defendant's motion is hereby **GRANTED**, and all references in plaintiffs' complaint to the "First, Fifth, Thirteenth and Fourteenth Amendments to the U.S. Constitution" are hereby **STRICKEN**.

3. The maintainability of counts one and two is not being challenged at this time. Count one is based on the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, and alleges "racial and religious discrimination and retaliation" in violation of Title VII. Count two is based on the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, and alleges discrimination and a deprivation of plaintiff's "federal rights."

4. By count five, plaintiff challenges the defendant's alleged consideration of his history of oral disciplinaries when making the decision to terminate him. Plaintiff characterizes this claim as involving a contract separate and apart from the collective bargaining agreement between IP and the local union of which he was a member and as arising under Alabama common law. The defendant, however, asserts that the claim alleges a breach of the collective bargaining agreement and, as such, is governed by federal law—particularly, the Labor Management Relations Act.

Although acknowledging that the defendant was granted the general authority, under the terms of the collective bargaining agreement, to discipline employees, plaintiff asserts that the defendant had an unwritten "policy" of taking into consideration only certain disciplinaries when meeting out punishment. The essence of plaintiff's contract claim is that the defendant deliberately and consciously violated this *unwritten policy* in his case in a calculated effort to terminate his employment.

5. The focus of this claim is unclear. Incorporating the portions of the complaint charging IP with, *inter alia*, a violation of 42 U.S.C. § 1981, count six alleges: "[t]he acts done by the defendant were intentional and done with the purpose to harass and inflict emotional distress upon the plaintiff." The complaint thus suggests that the count is premised on IP's alleged racial persecution of the plaintiff. Plaintiff's portion of the parties' joint pretrial document, however, suggests that plaintiff instead is challenging IP's consideration of oral reprimands of him in deciding to terminate him:

> Count VI is intentional infliction of emotion distress by the defendant in that plaintiff was unliked by defendant and defendant's management personnel intentionally met in order to figure out a way to create a disciplinary record on plaintiff since more than a year had passed without discipline. This was accomplished by an alleged "book" kept by Robert D. Sammons, Superintendent Woodyard/Pulp, in which he wrote various oral reprimands during 1989 and 1990. Conveniently, this book has been destroyed. The intent was to subject plaintiff to as much undue pressure, work assignments and hostile atmosphere in hopes that plaintiff would voluntarily quit. Plaintiff suffered emotionally and had to take medication for his nerves, which even caused plaintiff to miss the two days for which he was suspended for on February 4, 1991.

Defendant maintains that this claim is preempted by federal law since it is inextricably intertwined with plaintiff's breach of contract (the collective bargaining agreement) claim.

6. The focus of this claim is unclear. Incorporating the portions of the complaint charging IP with, *inter alia*, a violation of 42 U.S.C. § 1981, count seven alleges: "[t]he acts done by the defendant were negligent and as a proximate result, caused plaintiff the damages heretofore complained of." The complaint thus suggests that the count is premised on IP's alleged racial persecution of the plaintiff. In his portion of the parties' joint pretrial document, however, plaintiff explains that negligence "is pled in the alternative in case the acts complained of in Count VI were not done intentionally," thus suggesting that he is challenging IP's consideration of oral reprimands of him in deciding to terminate him by this claim. Defendant maintains that this claim is preempted by federal law since it is inextricably intertwined with plaintiff's breach of contract (the collective bargaining agreement) claim.

matter of law, under that Act and the unique facts of this case.

### Background [7]

1. Plaintiff, Charles–Claude Rasheed ("Rasheed"), is a former employee of the Hammermill Paper Division of the International Paper Company. He is black, a member of the Muslim religion, and a resident citizen of the State of Alabama.

2. Defendant, the Hammermill Paper Division of the International Paper Company ("IP"), is an international paper corporation that conducts, and at all times material to this action conducted, business within the State of Alabama and this judicial district. At all times material to this action, IP owned and operated the Riverdale Mill in Selma, Alabama, at which Rasheed was employed.

3. Rasheed was employed by IP from October 5, 1981, the date on which he was hired, until May 29, 1991, the date on which he was discharged. At the time of his discharge, Rasheed held the job of Assistant Equipment Operator Grade B. Such job is also known as the "Bark Operator."

4. At all times relevant to this case, a valid, binding collective bargaining agreement governing the wages, hours, and terms and conditions of employment (the "Agreement") existed between IP and the United Paperworkers International Union, AFL–CIO, Local Union No. 1441 (the "Union").[8] Rasheed was, at all times during his employment, a member of the bargaining unit represented by the Union, and his wages, hours, and terms and conditions of employment were governed by the Agreement. He kept a copy of the Agreement during the tenure of his employment.

5. The Agreement vests IP "with the right [of] discipline and discharge in accordance with the agreement" and permits an employee's discharge "for just cause." With specific reference to management's exercise of the rights of discipline and discharge, the Agreement provides: "Any injustice or discrimination deemed to exist as a result of the exercise of these prerogatives by management shall be subject to the 'Grievance Procedure' section of this agreement." The grounds, circumstances, justification for, and characteristics of employee discipline and discharge appear to be governed either by unwritten IP "policy"—as is alleged in this case—or by written agreements collateral to the collective bargaining agreement.

6. The Agreement includes a grievance and arbitration procedure for the resolution of complaints made by employee-members of the Union's bargaining unit. If a grievance is not settled during the pre-arbitration steps of the grievance procedure, the Union can request arbitration. Under the express terms of the Agreement, "[t]he decision of the Arbitrator shall be binding upon both the Company and the Union and shall be rendered within thirty (30) days of the [arbitration] hearing."

7. On February 1, 1991, Rasheed received a written reprimand and a two-week suspension. Premised on Rasheed's history of poor work attendance and inattention to the responsibilities of his job, the written reprimand specifically warned: "Any further neglect of your job, or absentees, will result in your immediate termination." Rasheed maintains that the adverse action was taken against him because of this race and religion and, further, asserts that IP impermissibly took into consideration his past disciplinary record in assessing his "punishment." With respect to the latter contention, Rasheed asserts that it was IP's "policy" to take into consideration only certain past disciplinaries when calculating punishment; that policy was violated in this instance, he maintains, when IP calculated the length of his suspension based on past disciplinaries which, under

---

7. The following undisputed facts are taken from the complaint (tab 1) and answer (tab 3), the parties' joint pretrial document (tab 18), plaintiff's December 4, 1992, deposition testimony (excerpts of which are appended to defendant's motion for summary judgment), the exhibits to plaintiff's deposition testimony (excerpts of which are appended to defendant's motion for summary judgment), and plaintiff's March 4, 1993, affidavit (tab 23).

8. The Agreement became effective on March 6, 1989, and is scheduled to terminate on March 6, 1994.

that "policy," should not have been considered.[9]

8. Sometime following the February suspension—presumably prior to Rasheed's later termination—, Rasheed filed a complaint with the EEOC, charging IP with having committed racial and religious discrimination. The EEOC made no ruling or final determination on the merits of Rasheed's complaint; instead, it issued Rasheed a right to sue notice on December 9, 1991. Rasheed did not file a grievance concerning his suspension.

9. On May 29, 1991, Rasheed was discharged from his employment with IP. The plaintiff's written discharge notice specifically noted that Rasheed had been observed sleeping on the job on Friday, May 24, 1991, and charged that Rasheed's "persistent poor work history [left] the Company no alternative but to terminate [his] employment." Rasheed agrees with the statement, contained in the discharge notice, that "On Friday, May 24, 1991, at approximately 5 o'clock in the afternoon, [he was] observed sleeping on the job by three individuals"; he contends, however, that his employment was terminated in retaliation for his filing of an EEOC complaint concerning his February 1991, suspension.

10. Sometime following his termination, Rasheed filed a second charge with the EEOC, alleging that he had been discriminated against in retaliation for filing the first EEOC charge. The EEOC made no ruling or final determination on the merits of Rasheed's second complaint; instead, it issued Rasheed a right to sue notice on January 7, 1992.

11. Also following his termination, Rasheed directed the Union to file a grievance for him, concerning his discharge, under the grievance procedures of the Agreement. The grievance was filed and prosecuted up to and through arbitration by the Union.[10] By his grievance, Rasheed primarily maintained that IP improperly considered his past disciplinary record, including numerous oral reprimands, in terminating his employment, in violation of the aforementioned IP "policy." Ultimately, the grievance was submitted to arbitration.

12. Following an arbitration hearing, during which Rasheed testified, the Arbitrator upheld Rasheed's discharge as having been for just cause. The Arbitrator's written ruling, which was issued on January 20, 1992, and ultimately was received by Rasheed, stated "that it was 'policy' to remove a record of discipline from an employee's personnel file if, after discipline, the employee worked for 12 months without being disciplined." [11] The Arbitrator further found, however, that:

9. Although Rasheed complains of this in his deposition, the court does not interpret count five of the complaint as including this alleged wrongful act as a discrete basis of the breach of contract claim.

10. At some time following his termination and, presumably, during the grievance process, Rasheed was offered, but rejected, a proposal for conditional reinstatement.

11. In pertinent part, the Arbitrator noted:
As noted in the letter discharging Grievant and Employer's responses to the Grievance, Grievant was discharged for a combinations [sic] of reasons: absenteeism and poor job performance which included sleeping on the job. From September, 1986, through October, 1989, Grievant received six oral "reprimands." ... Record of these oral reprimands or "talkings to" was not placed in Grievant's personnel file but, instead, was entered into a log kept by Sammons. This log was examined by Union Representatives during the grievance procedure. Between then and hearing, however, the pages of the log containing notes of oral

reprimands and "talkings to" had been torn by person or persons unknown. Nonetheless, each oral reprimand or "talking to" was cumulatively cited in written warning and suspensions subsequently given Grievant. And, according to Employer, shop Stewards accompany employees who are being given oral warnings.

\* \* \* \* \* \*

Other than oral reprimands, none of which was grieved, Grievant received three written reprimands and four suspensions between March, 1987, and February, 1991, only one of which ... was grieved.
The written grievances and suspensions noted by the Arbitrator were issued or occurred on: March 25, 1987 (three-day suspension), February 23, 1988 (written reprimand and five-day suspension), May 3, 1988 (written reprimand), May 28, 1988 (written reprimand and three-day suspension), August 13, 1990 (written reprimand), December 17, 1990 (written reprimand), and February 1, 1991 (two-week suspension and written reprimand). Continuing, the Arbitrator observed:

The written reprimands and suspension given [Rasheed] constitute a valid disciplinary record of [Rasheed's] employment. In considering these matters, it is noted that each subsequent reprimand or suspension occurred within 12 months of a prior reprimand or suspension. Thus at no time between March 25, 1987 and May 24, 1991, was any written reprimand or suspension subject to removal from [Rasheed's] personnel file. It is notable, further, that only once did [Rasheed] receive a written reprimand/suspension and that this grievance was not processed to arbitration. It follows that [Rasheed's] written disciplinary record prior to May 24, 1991, stands as admitted.

The Arbitrator concluded:

Taken together [Rasheed's] accumulated offenses, each of which provided just cause for discipline, and especially noting that [Rasheed] had been suspended three times and specifically warned of discharge, constitute just cause for discharge. Company's discharging [Rasheed] was not arbitrary or capricious. [Rasheed] had been accorded progressive discipline.[12]

13. This lawsuit was filed on March 18, 1992.

### Discussion

#### A. Jurisdiction and Venue

1. The court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, and 29 U.S.C. § 185.

The Parties' Labor Agreement contain no clauses pertaining to absenteeism. Nor does it describe a progressive discipline plan. It was stated, however, that it was Employer's "policy" to "look at" one day absences occurring before and after holidays and that it was "policy" to remove a record of discipline for an employee's personnel file if, after discipline, the employee worked for 12 months without again being disciplined.

12. It appears, from the Arbitrator's written ruling, that the Arbitrator incorrectly concluded that there was no continuous 12–month period, between March 25, 1987, and May 24, 1991, during which Rasheed received no written disciplinaries or suspensions. Specifically, Rasheed went undisciplined between May 28, 1988, and August 13, 1990—for over two years and two

2. Venue is appropriate in this judicial district. 28 U.S.C. § 1391; 29 U.S.C. § 185.

#### B. Standard of Review

3. Under Federal Rule of Civil Procedure 56(c), summary judgment is due to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Rice v. Branigar Organization, Inc., 922 F.2d 788, 790 (11th Cir.1991) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986)). The party moving for summary judgment

bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment.

Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.1991) (Cox, J.); see Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838 (11th Cir.1985). A defendant, as the moving party, may discharge its burden by showing that the plaintiff, as a matter of law, will be unable to establish an essential element of his or her case at trial, Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265, 275 (1986); Real Estate Financing v. Resolution Trust Corp.,

months. Under IP's policy, and accepting as true Rasheed's interpretation of that policy, Rasheed's disciplinary record preceding August 13, 1990, should not have been considered when IP made the February 1, 1991, decision to suspend him and the May 29, 1991, decision to terminate him.

The court notes that the Arbitrator offered a number of alternative reasons for his conclusion that IP terminated Rasheed's employment for "just cause." All but one of those grounds appears to have been tainted by the Arbitrator's apparent erroneous interpretation of Rasheed's disciplinary record. Whether the sole "untainted" ground would have been sufficient, in itself, to support the Arbitrator's "just cause" determination is not clear to the court and, more fundamentally, is not an issue that this court has to or can resolve.

950 F.2d 1540, 1543 (11th Cir.1992). In assessing a motion for summary judgment, the court must conduct a bifurcated inquiry, assessing in the first instance whether the moving party has satisfied its initial, exacting and arduous burden, and, in the second instance, whether the non-moving party successfully has rebutted the moving party's initial showing of no genuine issues of material fact.

4. The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences and resolving all reasonable doubts in its, her, or his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Adickes v. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir.1987). The district court, moreover, cannot resolve factual disputes by weighing conflicting evidence. *Tippens v. Celotex Corp.*, 805 F.2d 949 (11th Cir.1986), *reh'g den.*, 815 F.2d 66 (1987).

## C.  *Contentions on Summary Judgment*

5. Defendant's arguments on summary judgment may be summarized as follows:

*First:* The Labor Management Relations Act applies broadly to matters that arise under, or entail interpretation or application of the terms of, a collective bargaining agreement;

*Second:* Plaintiff's breach of contract claim, though styled or characterized as an attack on IP's application of a "policy" collateral to the operative collective bargaining agreement between IP and the Union, essentially "arises under" that Agreement and, thus, is preempted by the LMRA;

*Third: Narrowly interpreted* as attacking IP's consideration of oral reprimands in terminating the plaintiff, plaintiff's two tort claims similarly "arise under" the collective bargaining agreement and are preempted by the LMRA; and

*Fourth:* The Arbitrator's decision on Rasheed's termination grievance is final and binding, and no circumstances exist which would allow this court to examine or disturb that decision and proceed to consider plaintiff's contract and tort claims,

*even if* it appears that the decision is incorrect.

6. Broadly construed, plaintiff's arguments in opposition to defendant's motion for summary judgment are as follows:

*First:* Construction of the operative collective bargaining agreement is not necessary to the resolution of the breach of contract claim; thus, the LMRA does not apply to that claim;

*Second:* Even if the contract claim were to be interpreted as being preempted by the LMRA, circumstances exist in this case which at least give rise to a genuine issue concerning this court's entitlement to avoid the final, binding effect of the Arbitrator's decision;

*Third:* To the extent that the tort claims are construed as challenging IP's impermissible consideration of plaintiff's disciplinary history, resolution of them does not depend on an application of the operative collective bargaining agreement; thus, the LMRA does not apply to those claims; and

*Fourth:* The tort claims challenge IP's discriminatory and retaliatory conduct, rather than IP's impermissible consideration of plaintiff's disciplinary history; thus, those claims are not preempted by the LMRA.

7. This court must, and hereinafter shall, determine:

*First:* Whether plaintiff's breach of contract claim is preempted by the LMRA;

*Second: Broadly construing plaintiff's tort claims*, whether those claims are preempted by the LMRA; and

*Third:* Assuming that the contract and tort claims are, at least in part, preempted by the LMRA, whether circumstances exist in this case which permit this court to look beyond the Arbitrator's final and binding decision and consider the merits of those claims.

## D.  *Applicable Law*

### 1.  *Preemption and Plaintiff's Contract Claim.—*

8. Rasheed's complaint suggests that counts five, six, and seven are based on

Alabama common law. IP characterizes count five as alleging a breach of the collective bargaining agreement and counts six and seven as asserting derivative torts associated with the alleged breach.

9. It is settled law that claims which allege breach of a collective bargaining agreement, such as that which governed the wages, hours, and terms and conditions of Rasheed's employment, are preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185,[13] and are governed by federal law. *See Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962) ("The dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute.").

■ 10. Section 301 applies not only to matters which are encompassed by the explicit wording of a collective bargaining agreement; it also governs matters which generally arise under, or would entail interpretation or application of the terms of, a collective bargaining agreement. *See Darden v. United States Steel Corp.,* 830 F.2d 1116, 1119 (11th Cir.1987) (claims which are either founded directly on rights created on a collective bargaining agreement or are substantially dependent on analysis of the agreement are preempted); *see also Clarke v. Laborers International Union,* 916 F.2d 1539, 1543 (11th Cir.1990). Where, as here, a contract, by its express terms, broadly governs the terms and conditions of an employee's employment—employee discipline and discharge, for example—and relegates details to established company policy (written or unwritten) or industry practice, § 301 applies not only to the contract itself, but also to the policies and practices flowing from it. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960) ("The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common

law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it.").

■ 11. If a state law claim "can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Lingle v. Norge Division of Magic Chef,* 486 U.S. 399, 410, 108 S.Ct. 1877, 1883, 100 L.Ed.2d 410 (1988). "To be 'independent' of the collective bargaining agreement, and thus not be preempted, the resolution of a state law claim must turn on purely factual questions not touching upon the terms of the collective bargaining agreement." *Chube v. Exxon Chemical Americas,* 760 F.Supp. 557, 560 (M.D.La.1991). Where neither the elements of the state cause of action nor the defenses to it would entail any interpretation or analysis of the collective bargaining agreement, preemption does not apply. *Lingle v. Norge Division of Magic Chef,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988); *Jackson v. Kimel,* 992 F.2d 1318 (4th Cir.1993); *Hanks v. General Motors Corp.,* 906 F.2d 341 (8th Cir. 1990); *Keehr v. Consolidated Freightways, Inc.,* 825 F.2d 133 (7th Cir. 1987).

■ 12. By count five, plaintiff essentially challenges IP's action in considering a portion of plaintiff's disciplinary history (that is, oral reprimands) in making the decision to terminate him. The Agreement in this case relegated authority to IP to terminate employees for "just cause"; IP "policy," however, provided for the circumstances under which disciplinary matters would be considered in making a "just cause" determination. Even if the breach of contract claim is construed as not being "directly founded" on the collective bargaining agreement, resolution of the claim nevertheless is "substantially dependent" on an analysis of that Agreement. Accordingly, the claim is preempted by § 301 of the LMRA.

---

13. Section 301(a) of the Labor Management Relations Act provides that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

## 2. *Preemption and Plaintiff's Tort Claims.—*

13. Although the language of § 301 is facially limited—applying to "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce"—, courts have interpreted the preemptive sweep of that provision as applying equally to tort claims which arise under, or would entail interpretation or application of the terms of, a collective bargaining agreement. *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (preemptive effect of § 301 of the LMRA applies equally to tort and breach of contract claims).[14]

14. Courts have held that claims for intentional infliction of emotional distress and negligence are preempted by § 301 where those claims require an interpretation or application of a collective bargaining agreement. *See Darden v. United States Steel Corp.*, 830 F.2d 1116 (11th Cir.1987); *Jackson v. Southern California Gas Co.*, 881 F.2d 638, 645 (9th Cir.1989) (intentional infliction of emotional distress); *Johnson v. Anheuser Busch, Inc.*, 876 F.2d 620, 634 (8th Cir.1989) (intentional infliction of emotional distress);

*Binkley v. Loughran*, 714 F.Supp. 768, 771 (M.D.N.C.1988), *aff'd*, 940 F.2d 651 (4th Cir. 1991) (intentional infliction of emotional distress); *United Steelworkers of America v. Rawson*, 495 U.S. 362, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990) (negligence); *International Brotherhood of Electrical Workers v. Hechler*, 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987) (negligence); *Clarke v. Laborers International Union*, 916 F.2d 1539 (11th Cir.1990) (negligence). That is so even in those instances in which the claims were not submitted to arbitration. *See Parker v. Connors Steel Co.*, 855 F.2d 1510 (11th Cir. 1988).

■ 15. To the extent—and only to the extent—that counts six and seven are premised on IP's alleged improper reliance on Rasheed's disciplinary history in discharging Rasheed, those claims are preempted by § 301. That is so because resolution of the claims, thus characterized, would entail interpretation or application of the provisions of the collective bargaining agreement applicable to management's right to discipline and discharge, the "just cause" condition on the right to discharge, and all of the "conditions

14. In *Allis–Chalmers*, the plaintiff sued in tort for an alleged bad faith handling of benefit claims. The Court held that:

> If the policies that animate § 301 are to be given their proper range, ... the preemptive effect of § 301 must extend beyond suits alleging contract violations ... thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract.

*Allis–Chalmers*, 471 U.S. at 210–11, 105 S.Ct. at 1910–11. The reasons on which this principle is based were further explained by the Court:

> A final reason for holding that Congress intended § 301 to preempt this kind of derivative tort claim is that only that result preserves the central role of arbitration in our 'system of industrial self-government'
> \*   \*   \*   \*   \*   \*
> Since nearly any alleged willful breach of contract can be restated as a tort claim for breach of a good faith obligation under a contract, the

> arbitrator's role in every case could be bypassed easily if § 301 is not understood to preempt such claims. Claims involving vacation or overtime pay, work assignments, unfair discharge—in short, the whole range of disputes traditionally resolved through arbitration—could be brought in the first instance in state court by a complaint in tort rather than in contract. A rule that permitted an individual to sidestep grievance procedures would cause arbitration to lose much of its effectiveness, as well as eviscerate a central tenet of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has responsibility to interpret the labor contract in the first instance.

*Id.* at 219–20, 105 S.Ct. at 1915.

The Court since has reiterated this principle. *See United Steelworkers of America v. Rawson*, 495 U.S. 362, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990); *International Brotherhood of Electrical Workers v. Hechler*, 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987).

of employment" encompassed by the collective bargaining agreement.

■ 16. To the extent, however, that plaintiff is attempting to redress IP's alleged racial discrimination of him by counts six and seven, those counts are *not* preempted by § 301 and are not due to be dismissed at this time. That is so because the claims, thus characterized, "can be resolved without interpreting the agreement itself," *see Lingle v. Norge Division of Magic Chef,* 486 U.S. 399, 410, 108 S.Ct. 1877, 1883, 100 L.Ed.2d 410 (1988), and "turn on purely factual questions not touching upon the terms of the collective bargaining agreement." *See Chube v. Exxon Chemical Americas,* 760 F.Supp. 557, 560 (M.D.La.1991).

17. As noted, *supra* in footnotes 5 and 6, plaintiff appears to incorporate the facts underlying both his 42 U.S.C. § 1981 *and* breach of contract claims in counts six and seven. To the extent that those counts relate to plaintiff's breach of contract claim, they are preempted and, for the reasons that follow, are due to be dismissed. Otherwise, counts six and seven are due to proceed as alternative theories of liability to plaintiff's claims for racial discrimination.

### 3. *Section 301 of the LMRA*

18. As noted, plaintiff's breach of contract claim is preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The plaintiff has not named the Union as a party-defendant to that claim.[15]

■ 19. Arbitration is generally favored as a matter of federal labor policy. *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). To encourage reliance on arbitration as a viable and meaningful

vehicle for resolving disputes, judicial review of arbitration awards has been substantially constricted. *See Smith v. Babcock & Wilcox Co., Refractories Division,* 726 F.2d 1562, 1564 (11th Cir.1984); *Harris v. Schwerman Trucking Co.,* 668 F.2d 1204 (11th Cir.1982); *see also Teamsters, Chauffeurs, Warehousemen, Helpers and Food Processors, Local Union 657 v. Stanley Structures, Inc.,* 735 F.2d 903, 905 (5th Cir.1984). Generally, enforcement of an arbitration award will be upheld, and the finality provisions of the collective-bargaining agreement will be enforced, *unless* the dispute was not "arguably arbitrable," *International Association of Machinists v. Texas Steel,* 639 F.2d 279, 281 (5th Cir.1981), the arbitral decision did not draw its essence from the collective bargaining agreement, or enforcement of the award by the court would violate public policy. *United Paperworkers International Union v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); *W.R. Grace & Co. v. Local Union 759,* 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983); *Amalgamated Meat Cutters v. Great Western Food Co.,* 712 F.2d 122 (5th Cir.), *reh'g den.,* 717 F.2d 1399 (1983); *see also Alabama Power Co. v. International Brotherhood of Electrical Workers,* 612 F.2d 960, 962 (5th Cir.1980); *Safeway Stores v. American Bakery and Confectionery Workers,* 390 F.2d 79, 82 (5th Cir.1968).

20. Suits brought by an aggrieved employee against his employer usually take the form of a § 301/fair representation or "hybrid" suit, in which the plaintiff asserts a claim against the union for breach of the duty of fair representation, stemming from the union's handling of the plaintiff's grievance, and a claim against the employer for an alleged breach of the collective bargaining agreement.[16] In a "hybrid" suit, the employ-

---

15. Actually, following the close of discovery and what was to have been the pretrial conference in this case, the plaintiff sought leave to amend his complaint to add the Union and the Union's Local President, Frankie Middleton, as defendants. Plaintiff's request was denied, principally because it was untimely.

16. Concurring in the judgment, Justice Stewart explained the characteristics and practicalities of such a "hybrid" suit in *United Parcel Service v.*

*Mitchell,* 451 U.S. 56, 66–69, 101 S.Ct. 1559, 1565–67, 67 L.Ed.2d 732, 742–44 (1981):

A hybrid suit consists of two distinct claims, each with its own jurisdictional basis. *See DelCostello [v. International Brotherhood of Teamsters,* 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476, 488 (1983)]. The cause of action against the employer rests on section 301 of the LMRA, 29 U.S.C. § 185; the employee is alleging a breach of the collective-bargaining agreement. The cause of action against the union rests on the union's duty of

ee contends that he or she did not prevail against the employer because the union failed to prosecute the employee's grievance in proper fashion through the dispute resolution mechanism provided for in the collective bargaining agreement. *Hester v. International Union of Operating Engineers,* 818 F.2d 1537, 1549 (11th Cir.) (Tjoflat, J., dissenting) ("*Hester* I"), *clarified, reh'g den.,* 830 F.2d 172, 175 (1987) (per curiam) ("*Hester* II"), *vacated on other grounds,* 488 U.S. 1025, 109 S.Ct. 831, 102 L.Ed.2d 963 (1989).

21. Although the union is not a necessary party to an action brought against the employer for breach of the agreement, a plaintiff in a § 301 action nevertheless must establish the union's breach of the duty of fair representation, as well as demonstrate that the arbitrator's decision did not draw its essence from the agreement, before being able to proceed against the employer. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231, 245 (1976); *Hayes v. Reynolds Metals Co.,* 769 F.2d 1520, 1522 (11th Cir.1985), *reh'g den.,* 782 F.2d 180 (1986); *Diaz v. Schwerman Trucking Co.,* 709 F.2d 1371, 1376 (11th Cir.1983). In theory, an employee does not have to sue both the union and the employer. The employee may sue only one, "but the case he must prove is the same whether he sues one, the other, or both." *DelCostello,* 462 U.S. at 165, 103 S.Ct. at 2291, 76 L.Ed.2d at 489. Thus, the case the employee must prove reduces to this proposition: "a plaintiff[-employee] must prevail upon his unfair representation claim before he [or she] may even litigate the merits of his [or her] § 301 claim against the employer." *United Parcel Service v. Mitchell,* 451 U.S. 56, 67, 101 S.Ct. 1559, 1566, 67 L.Ed.2d 732, 743 (1981) (Stewart, J., concurring in judgment); *Taylor v. Ford Motor Co.,* 761 F.2d 931, 933 (3d Cir. 1985), *cert. den.,* 474 U.S. 1081, 106 S.Ct. 849, 88 L.Ed.2d 890 (1986).

22. The employee's crucial burden in establishing that the union breached its duty of fair representation is substantial. If the employee cannot show that the union breached its duty (either for lack of evidence or because the union acted properly), then the employee will not be heard to complain against the employer. *See Babcock & Wilcox,* 726 F.2d at 1564. If, for example, the union acted properly in representing the employee, and the employee lost in all stages of the grievance or arbitration proceedings prescribed in the collective-bargaining agreement, a court will not relitigate the case against the employer, even if it appears that the employee should have prevailed against the employer.

23. The union's breach of its duty may invalidate an otherwise binding decision if it "seriously undermines the integrity of the arbitral process." *Hines,* 424 U.S. at 567, 96 S.Ct. at 1057, 47 L.Ed.2d at 243. In the context of a member's grievance with the employer, the union may not act in a discriminatory, dishonest, arbitrary, or perfunctory fashion, *see DelCostello,* 462 U.S. at 164, 103 S.Ct. at 2290, 76 L.Ed.2d at 488; it "may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion." *Vaca v. Sipes,* 386 U.S. 171, 191, 87 S.Ct. 903, 917, 17 L.Ed.2d 842, 858 (1967); *Parker,* 855 F.2d 1510; *Harris,* 668 F.2d 1204; *Hester* I, 818 F.2d at 1549 (Tjoflat, J., dissenting); *see also Air Line Pilots Association v. O'Neill,* 499 U.S. 65, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991).

24. In policing conduct that is "arbitrary and perfunctory," courts have been willing

to look beyond the question whether the union in fact pursues an employee's grievance (contractual or statutory) and to determine whether the union has made a full investigation, has given the grievant notice and an opportunity to participate, has mus-

---

fair representation, implied from the NLRA, 29 U.S.C. § 151–170; the employee is alleging that the union breached its duty to process properly his or her grievance with the employer. In essence, the hybrid § 301/fair representation suit or "claim" amounts to "a direct challenge to 'the private settlement of disputes under [the collective-bargaining agreement].'"

*Mitchell,* 451 U.S. at 66, 101 S.Ct. at 1565, 67 L.Ed.2d at 742 (Stewart, J., concurring in the judgment); *see also Delcostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 165, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476, 489 (1983).

tered colorable arguments and has refuted insubstantial arguments by the employer.

R. Gorman, Labor Law 781 (1976)

*Hester I*, 818 F.2d at 1549 (Tjoflat, J., dissenting).

■ 25. A union, however, is allowed considerable latitude in its representation of employees. *Hines*, 424 U.S. at 563–64, 96 S.Ct. at 1055–56, 47 L.Ed.2d at 241. The grievance and arbitration processes are not conducted in a judicial forum, and union representatives are not held to strict standards of trial advocacy. *Parker*, 855 F.2d 1510; *Babcock & Wilcox Co.*, 726 F.2d at 1564; *Harris*, 668 F.2d 1204; *Findley v. Jones Motor Freight*, 639 F.2d 953, 958 (3d Cir. 1981); *see also Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956); *Grovner v. Georgia–Pacific Corp.*, 625 F.2d 1289 (5th Cir. Unit B 1980); *Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, 607 F.2d 649 (5th Cir. 1979).

Consequently,

although [the union's activity] is circumscribed by a duty to act with "complete good faith and honest purpose," *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 [73 S.Ct. 681, 686, 97 L.Ed. 1048], employee's burden "remain[s] a substantial one." *Hines v. Anchor Motor Freight*, 424 U.S. 554, 570, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231, 245 (1976) ]. *Nothing less than a demonstration that the union acted with reckless disregard for the employee's rights or was grossly deficient in its conduct will suffice to establish such a claim.* In this context, we believe that a claim that a union acted "perfunctorily" requires a demonstration that the union ignored the grievance, inexplicably failed to take some required step, or gave the grievance merely cursory attention.

*Harris*, 668 F.2d at 1206–07 (citations omitted); *see United Steelworkers v. Rawson*, 495 U.S. 362, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990).

26. "[N]either negligence on the part of the union nor a mistake in judgment is sufficient to support a claim that the union acted in an arbitrary and perfunctory manner." *Harris*, 668 F.2d at 1206 (citing *Findley*, 639 F.2d at 960); *Ruzicka v. General Motors Corp.*, 649 F.2d 1207, 1212 (6th Cir.1981); *Hoffman v. Lonza, Inc.*, 658 F.2d 519, 521 (7th Cir.1981); *Wyatt v. Interstate & Ocean Transport Co.*, 623 F.2d 888, 891 (4th Cir. 1980); *NLRB v. American Postal Workers Union*, 618 F.2d 1249, 1255 (8th Cir.1980); *Coe v. United Rubber, Cork, Linoleum & Plastic Workers of America*, 571 F.2d 1349, 1350–51 (5th Cir.1978); and *Robesky v. Quantas Empire Airways, Ltd.*, 573 F.2d 1082, 1090 (9th Cir.1978)); *see also Parker*, 855 F.2d at 1519; *Higdon v. United Steelworkers of America*, 706 F.2d 1561, 1562 (11th Cir.1983).

### E.  *Plaintiff's § 301 Claim*

27. In this case, plaintiff cannot proceed further on count five and the related portions of counts six and seven because there is no question but that the union did *not* breach its duty of fair representation when representing Rasheed before the arbitrator.

■ 28. Plaintiff has expressed only three negative opinions concerning the Union's representation of him before the arbitrator:[17] (1) that the Union could have done a "little better in choosing an arbitrator," and (2) that the Union may not have appealed the arbitrator's decision, and (3) that the Union delayed providing Rasheed with information about his grievance after it already had been litigated before the arbitrator.  None of those opinions could conceivably amount to a breach of the Union's duty of fair representation.  Accordingly, this court is without the authority to entertain plaintiff's breach of contract claim and the related portions of his intentional infliction of emotional distress and negligence claims.

### Conclusion

In light of the foregoing, the court concludes that the motion for partial summary

---

**17.** By deposition, Rasheed testified that the had no complaints with the Union's handling of his

grievance up until the point of arbitration.

judgment filed by defendant IP is due to be, and hereby is, **GRANTED in part and DE-NIED in part.** The court shall refrain, however, from issuing a final judgment on the favorable portion of said motion until after the court has resolved plaintiff's remaining claims. The case will proceed to trial on counts one and two and on the racial discrimination allegations of counts six and seven.