CROWNE INVESTMENTS, INC.
d/b/a Crowne Healthcare of
Greenville, Plaintiff,

v.

UNITED FOOD AND COMMERCIAL
WORKERS, LOCAL NO. 1657, et
al., Defendants.

Civil Action No. 96–A–1249–N.

United States District Court,
M.D. Alabama,
Northern Division.

March 27, 1997.

Edward S. Brown, P. Richard Hartley, Greenville, AL, for plaintiff.

Samuel H. Heldman, Frederick Kuykendall, Birmingham, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

### I. INTRODUCTION

This cause is before the court on a Motion to Remand, filed by Crowne Investments, Inc. ("Crowne") and on a Motion to Dismiss filed by United Food and Commercial Workers, Local No. 1657 ("Local No. 1657") and George Seidenfaden ("Seidenfaden") (collectively "Defendants").

On July 29, 1996, Crowne filed a Complaint alleging state law claims against the Defendants in the Circuit Court of Butler County, Alabama. The Defendants filed a Notice of Removal in this court on August 12, 1996. The Defendants stated that removal was appropriate pursuant to the doctrine of "complete preemption" under § 301 of the Labor–Management Relations Act of 1947 ("LMRA"). See 29 U.S.C. § 185(a) (" § 301"). The Defendants subsequently filed a Motion to Dismiss. Crowne filed a Motion to Remand or in the Alternative, in Opposition to the Motion to Dismiss on August 29, 1996. Crowne also subsequently moved for the imposition of attorneys fees pursuant to 28 U.S.C. § 1447(c) (providing for imposition of attorneys fees upon remand of a removed case).

For reasons to be discussed, the Motion to Remand is due to be DENIED and the Motion to Dismiss is due to be GRANTED in part and DENIED in part.

### II. FACTS

Local No. 1657 filed an Unfair Labor Practice charge with the National Labor Relations Board ("NLRB") charging that Crowne had unlawfully discharged Debra Burke, an employee of Crowne, in retaliation for union advocacy. There was no collective bargaining agreement between Crowne and Local No. 1657. In May of 1996, Crowne, Local No. 1657, and Debra Burke entered into a "Release and Settlement Agreement" ("Settlement Agreement") by which Debra Burke agreed to withdraw her unfair labor practice charge. The agreement provided that Burke would be paid $13,500.00. The Settlement Agreement also contained a confidentiality clause by which the parties agreed not to disclose the terms of the Agreement and not to disclose the settlement amount paid.

Crowne alleges that in July 1996, representatives of Local No. 1657 distributed leaflets to employees of Cogburn Health Center, and others, which stated in part that "Jake Cureton just had to pay an employee from his Greenville facility $13,000 because he fired her for being a Union Supporter." Crowne alleges that distribution of this leaflet violated the Settlement Agreement and caused Crowne damages. Crowne asserts four state law claims: fraud, statutory deceit, breach of contract, and bad faith.

### III. MOTIONS STANDARD

#### A. Motion to Remand

Federal courts are courts of limited jurisdiction. See Kokkonen v. Guardian Life Ins. Co. Am., 511 U.S. 375, 376–78, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994); Burns v. Windsor Insurance Co., 31 F.3d 1092, 1095 (1994); Wymbs v. Republican State Executive Committee, 719 F.2d 1072, 1076 (11th Cir.1983), cert. denied, 465 U.S. 1103, 104 S.Ct. 1600, 80 L.Ed.2d 131 (1984). As such, federal courts only have the power to hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. See, Kokkonen, 511 U.S. at 376–78, 114 S.Ct. at 1675. Because federal

court jurisdiction is limited, the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear. *See Burns,* 31 F.3d at 1095.

## B. Motion to Dismiss

A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir.1986)("[W]e may not ... [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief") (citation omitted). The court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party. *Hishon,* 467 U.S. at 73, 104 S.Ct. at 2232–33. Furthermore, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir.1985).

## IV. *DISCUSSION*

### A. Motion to Remand

Removal of a case to federal court is only proper if the case originally could have been brought in federal court. *See* 28 U.S.C. § 1441(a). In this case, the Defendants argue that removal was proper because the court has federal question jurisdiction. Federal question jurisdiction requires that the action arise under the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 1331. In deciding whether a federal question exists, the court must apply the well-pleaded complaint rule whereby the court looks to the face of the complaint, rather than to any defenses asserted by the defendant. *See Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429–30, 96 L.Ed.2d 318 (1987). Consequently, the general rule is that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption. *See Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430.

There is, however, an exception, or corollary, to the well-pleaded complaint rule and it is this exception to which the Defendants point in claiming that this court has federal question jurisdiction. This exception is known as the "complete preemption" doctrine. *Id.* Where the removal petition demonstrates that the plaintiff's claims, although couched in the language of state law claims, are federal claims in substance, the preemptive force of federal law provides the basis for removal jurisdiction. *See Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). This exception is recognized in the rare instance that Congress so "completely pre-empts a particular area that any civil complaint ... is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). It is because of the doctrine of "complete preemption" that this court must look beyond the face of Crowne's Complaint, which alleges no claims under federal law, and examine the substance of Crowne's claims.

Although the instances in which complete preemption has been recognized are rare, the Supreme Court has found complete preemption with regard to § 301 of the LMRA. *See Avco Corp.,* 390 U.S. at 559, 88 S.Ct. at 1236–37. Section 301 states, in relevant part, that

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

■ Crowne argues that § 301 does not apply to the instant case because there is no collective bargaining agreement at issue. Not only does the express language of § 301 not require a collective bargaining agreement in order for there to be a contract within the meaning of § 301, but the United States Supreme Court has also determined that the scope of § 301 is not limited to collective bargaining agreements. *See Retail Clerks*

*Internat'l Assoc., Local Unions Nos. 128 and 633 v. Lion Dry Goods, Inc.*, 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962). In *Lion Dry Goods*, the United States Supreme Court held that a strike settlement agreement was a contract for purposes of § 301. *Lion Dry Goods*, 369 U.S. at 28, 82 S.Ct. at 548. The Court reversed the lower court's holding that to be within § 301 contracts must be collective bargaining agreements and must be with a union that is the recognized majority representative of the employees. It was argued in *Lion Dry Goods*, as in the instant case, that § 301 is limited to contracts that are collective bargaining agreements. *Id.* at 23, 82 S.Ct. at 545–46. There was no collective bargaining agreement between the union and Lion Dry Goods. In holding that the construction of § 301 advanced by the employer was too limited, the Court explained that "[i]t is enough that this is clearly an agreement between employers and labor organizations significant to the maintenance of labor peace between them." *Id.* The Eleventh Circuit, following *Lion Dry Goods*, has held that to fall within § 301, a contract may be "any agreement 'between employers and labor organizations significant to the maintenance of labor peace between them'." *Frech v. Pensacola Steamship Assoc.*, 903 F.2d 1471, 1475 (11th Cir.1990) (quoting *Deaton Truck Line, Inc. v. Local Union 612*, 314 F.2d 418, 422 (5th Cir.1962), which held that "'contracts', as [used in § 301], includes more than 'collective bargaining agreements.'").

Although the United States Supreme Court has explicitly recognized settlement of strike agreements as § 301 contracts, the types of contracts which have been held to fall within § 301, in addition to collective bargaining agreements, have not been limited to settlement of strike agreements. *See e.g., In re General Motors Corp.*, 3 F.3d 980 (6th Cir.1993) (documents describing an Employee Assistance Program constitute a contract for purposes of § 301); *Rasheed v. Internat'l Paper Co.*, 826 F.Supp. 1377 (S.D.Ala.1993) (§ 301 applies to the policies and practices flowing from a contract).

■ "It is well-established that § 301 must be broadly construed to encompass any agreement, written or unwritten, formal or informal, which functions to preserve harmo-

nious relations between labor and management." *Smith v. Kerrville Bus. Co. Inc.*, 709 F.2d 914, 919 (5th Cir.1983). In fact, federal courts have specifically determined that "[g]rievance settlement agreements are clearly 'contracts,' for purposes of subject matter jurisdiction over actions thereon, within the meaning of [§ 301]." *Newton v. Local 801*, 507 F.Supp. 439, 443 (S.D.Ohio), *aff'd*, 684 F.2d 401 (6th Cir.1982). It has also been held that, under *Lion Dry Goods*, a settlement agreement between an employer and union with respect to a single employee's claims is a contract within § 301. *See Amalg. Meat Cutters and Butcher Workmen of North America, Local No. 195 v. M. Feder & Co.*, 224 F.Supp. 739 (E.D.Pa.1963). In addition, the Ninth Circuit has held that a settlement agreement entered into after an employee filed a grievance over her allegedly discriminatory discharge was a contract within § 301. *See Desherlia v. Alpha Beta Co.*, No. 87–6045, 1988 WL 74728 (9th Cir. July 7, 1988).

In the instant case, the settlement agreement at issue was entered into between an employer and a union to resolve an unfair labor practice charge in which it was alleged that an employee had been discriminatorily discharged because of union advocacy. Therefore, the contract at issue is factually analogous to cases which have previously held that settlement agreements are § 301 contracts.

The Defendants also argue that because the Settlement Agreement avoided a protracted dispute and litigation, it promoted labor peace. The court accepts the Defendants' characterization of the Settlement Agreement to the extent that the agreement resolved a dispute over whether an employee was fired because she supported the union and, therefore, could have avoided further action by the union against the employer.

■ Since § 301 is not limited to collective bargaining agreements, or to contracts between employers and unions which are majority representatives of the employees of the contracting employer, the Settlement Agreement at issue clearly is a § 301 contract. This is because it, like other settlement agreements held to be § 301 contracts,

is a contract between a labor union and an employer which was significant to the maintenance of labor peace between them. However, simply finding that the agreement at issue is a contract within § 301 does not end the inquiry. There must be a sufficient relationship between the state law claims and the labor contract to allow for complete preemption. Therefore, Crowne's state law claims must be examined to determine if there is a sufficient relationship between each claim and the Settlement Agreement.

■ Crowne brings a state law claim for breach of the Settlement Agreement. Since this court has already determined that the Settlement Agreement is a § 301 contract, Crowne's state law breach of contract claim necessarily involves an interpretation of a § 301 contract. This is precisely the kind of claim with which Congress was concerned when it provided for preemption under § 301, because Congress wanted to insure that there would be uniform interpretation of the meaning and effect of the provisions of labor contracts. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 210, 105 S.Ct. 1904, 1910–11, 85 L.Ed.2d 206 (1985). A finding that Crowne's contract claim is preempted, however, is merely a finding of simple preemption, that is, that preemption provides a defense, and does not mean that this court is vested with subject matter jurisdiction over Crowne's claims. *See Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430. Accordingly, the court must look to see whether all of Crowne's state law claims are completely preempted by § 301 to find that there is subject matter jurisdiction over Crowne's claims in this court.

In order for there to be complete preemption of state law tort claims, § 301 requires that the state law claims be "inextricably intertwined with consideration of the terms" of the § 301 contract, *Lueck,* 471 U.S. at 213, 105 S.Ct. at 1912, or be "substantially dependent" on analysis of the contract. *See Internat'l Brotherhood of Electrical Workers, AFL–CIO v. Hechler,* 481 U.S. 851, 852, 107 S.Ct. 2161, 2163, 95 L.Ed.2d 791 (1987).

■ Crowne's argument that there can be no complete preemption of its state law claims because there is no need to interpret a collective bargaining agreement is unavailing

since, as was discussed above, the § 301 labor contract in this case is the Settlement Agreement, not a collective bargaining agreement. The court finds that complete preemption is not limited to claims which require interpretation of a collective bargaining agreement, but extends to claims which require interpretation of any § 301 contract. The issue, then, is not whether a collective bargaining agreement must be interpreted to resolve the state law claims, but whether the Settlement Agreement must be interpreted to resolve those claims.

■ In deciding whether state law tort claims require interpretation of the terms of a labor contract, courts in the Eleventh Circuit look to the elements of the state law claims. *See Lightning v. Roadway Express,* 60 F.3d 1551, 1557 (11th Cir.1995). Under Alabama law, to state a claim for fraud, a plaintiff must show that the defendant knowingly made a misrepresentation regarding a material fact, that the plaintiff relied on the misrepresentation, and was injured as a result of his reliance. *Voyager Guaranty Ins. Co., Inc. v. Brown,* 631 So.2d 848, 850 (Ala. 1993). The related claim of statutory deceit requires a showing of willful misrepresentation of a material fact made to induce another to act, and upon which he does act to his injury. *See Ala.Code* §§ 6–5–103, 6–5–104. Since both of these claims asserted by Crowne involve similar elements of proof, for purposes of § 301 preemption, the court will address them together.

In evaluating whether Crowne's fraud and statutory deceit claims are substantially related to the Settlement Agreement, this court is guided by the reasoning of the Sixth Circuit in an opinion in which it held that misrepresentation and invasion of privacy claims arising from an alleged breach of confidentiality were pre-empted under § 301. *See In re General Motors Corp.,* 3 F.3d 980 (6th Cir.1993). The § 301 contract which was at issue in the Sixth Circuit case consisted of documents describing an Employee Assistance Program for employees with problems stemming from drug and alcohol abuse. *Id.* at 982. The plaintiff alleged that his participation in the assistance program was not kept confidential. *Id.* The court noted that

the plaintiffs state law claims could not be analyzed without interpreting the underlying contract which stated that participation in the program would be kept confidential. *Id.* at 984.

Similarly, in the instant case, Crowne has couched its fraud and deceit claims in terms of the Defendants' knowledge at the time they entered into the Settlement Agreement. According to Crowne, the Defendants intended to violate the confidentiality clause, but represented that they would not violate the clause. The Defendants then allegedly violated the clause, making their earlier representations fraudulent and deceitful, according to Crowne. Therefore, a determination of whether the Defendants are liable for either fraud or deceit cannot be made without interpreting the underlying contract and deciding if there was a breach of the confidentiality clause.

 Crowne also brings a state law claim against the Defendants for bad faith. A claim alleging breach of the duty of good faith and fair dealing provides that neither party will interfere with the rights of the others to receive the benefits of the agreements. *See Hilley v. Allstate Ins. Co.,* 562 So.2d 184 (Ala.1990). The Supreme Court of the United States has previously addressed preemption of a breach of a duty of good faith claim and found that because "the right asserted not only derives from the contract, but is defined by the contractual obligation of good faith, any attempt to assess liability ... inevitably will involve contract interpretation." *Lueck,* 471 U.S. at 218, 105 S.Ct. at 1914. Alabama law also relates a claim of bad faith to the underlying contractual obligation, so that a state law claim of bad faith in the instant case, if viable at all, would be substantially dependent upon interpretation of the contract.[1]

Because all of Crowne's state law claims are substantially dependent on an interpretation of a § 301 contract, there is complete preemption in this case. Therefore, this court has jurisdiction over Crowne's claims

so that removal to this court was proper and the Motion to Remand is due to be denied.[2]

## B. Motion to Dismiss

Since it has been established that this court has jurisdiction in the instant case, the court must now address whether Crowne has adequately stated a claim upon which relief may be granted under § 301 of the LMRA.

 The Defendants first argue that Crowne's claim must be dismissed as to Seidenfaden as an individual defendant. Seidenfaden is the president, and presumably a member, of Local No. 1657. The United States Supreme Court has previously held that union members and officers cannot be held liable as individuals under § 301. *See Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). In holding that individual union members and officers were not to be held liable the Court stated that labor policy "cannot be evaded or truncated by the simple device of suing union agents or members, whether in contract or tort, or both ... for damages for violation of a collective bargaining contract for which damages the union itself is liable." *Atkinson,* 370 U.S. at 249, 82 S.Ct. at 1325.

For the reasons discussed previously as to jurisdiction and preemption applying to § 301 contracts other than collective bargaining agreements, the court finds that *Atkinson* governs this case. Accordingly, Seidenfaden is due to be dismissed as an individual defendant.

 Seidenfaden is also due to be dismissed insofar as he is named in an "official capacity." Since Local No. 1657 is sued, it would be redundant and unnecessary to also sue its president in an official capacity.

The Defendants also argue that Crowne's claim for punitive damages is due to be dismissed. The Eleventh Circuit had, at one time, indicated that punitive damages are not available under § 301 of the LMRA. *See United Steelworkers of America, AFL–CIO–CLC v. Connors Steel Co.,* 855 F.2d 1499 (11th Cir.1988), *cert. denied, H.K. Porter Co.,*

---

1. The question of whether state law in Alabama recognizes a bad faith claim in relation to other than an insurance contract is not before the court.

2. In light of the court's ruling that the Motion to Remand be denied, Crowne's Motion for Attorneys Fees under 28 U.S.C. § 1447(c) is DENIED.

*Inc. v. United Steelworkers of America. AFL–CIO–CLC,* 489 U.S. 1096, 109 S.Ct. 1568, 103 L.Ed.2d 935 (1989). The court stated that the trial court in the case "did not err in holding that plaintiffs were not entitled to recover extra-contractual compensatory and punitive damages under § 301 of the Labor Act." *Connors Steel Co.,* 855 F.2d at 1509–10. In so holding, the Eleventh Circuit relied on the reasoning in a Fifth Circuit opinion that the relief sought in a § 301 claim is equitable in nature because there is no right to a jury trial in such cases. *Connors Steel Co.,* 855 F.2d at 1509–10 (citing *Calamia v. Spivey,* 632 F.2d 1235 (5th Cir.1980)). However, the Eleventh Circuit has recently held that there is a right to a jury trial in § 301 cases. *See Stewart v. KHD Deutz of America Corp.,* 75 F.3d 1522 (11th Cir.1996). Because the ruling in *Stewart* undercuts the reasoning in *Connors Steel Co.,* this court finds that the law in this circuit is not settled as to whether punitive damages may be awarded in a § 301 breach of contract case.

■ In support of the argument that punitive damages should not be assessed, the Defendants cite *IBEW v. Foust,* 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979). *Foust,* however, held that punitive damages cannot be assessed against a union under the National Railway Labor Act. *Foust,* 442 U.S. at 52, 99 S.Ct. at 2127–28. The breach at issue in the instant case is a breach of contract under § 301 of the LMRA. It is recognized, however, as a general rule that punitive damages are not allowed in breach of contract actions brought under § 301. *See Moore v. Local Union 569 of Intern'l Broth., of Elec. Workers,* 989 F.2d 1534, 1542 (9th Cir.1993), cert. denied, 510 U.S. 1117, 114 S.Ct. 1066, 127 L.Ed.2d 385 (1994); *Williams v. Pacific Maritime Ass'n,* 421 F.2d 1287, 1289 (9th Cir.1970); *Local 127, United Shoe Workers of America v. Brooks Shoe Manufacturing Co.* 298 F.2d 277 (3d Cir.1962). The Defendant's Motion to Dismiss is therefore due to be granted as to Crowne's claim for punitive damages.

■ The Defendants also argue that not only are Crowne's state law claims completely pre-empted by the § 301 claim, but that the § 301 claim is due to be dismissed for failure to state a claim. The Defendants' only argument, however, with regard to whether Crowne has stated a claim for violation of the contract is that Crowne has failed to adequately allege injury due to the breach of contract. The Defendants argue that Crowne has failed to show that any breach of the agreement caused damages because 1) the breach could not have caused the payment of $13,500 and 2) there is no allegation that the distributed leaflet caused unionization at either Cogburn or Crowne. Crowne's allegation with regard to damages in his original state law breach of contract claim is that "Plaintiff is entitled to damages resulting from Local No. 1657's breach of contract." Complaint at ¶ 31.

It is usually difficult to determine damages for breach of an agreement to keep a settlement confidential. It is for that reason that confidentiality agreements often include a provision specifying liquidated damages for breach.

This court finds, however, that it does not appear beyond doubt that Crowne can prove no set of facts in support of the breach of contract claim. Crowne has pleaded that the Defendants' actions damaged Crowne's business reputation. Complaint at ¶ 25. To the extent that this damage was foreseeable and in the contemplation of the parties when they entered into the Settlement Agreement which contained the confidentiality clause, Crowne may be able to establish contract damages for injury to business reputation. Crowne may also be able to establish that it is entitled to damages for partial failure of consideration based upon the Defendants' alleged failure to comply with the confidentiality clause. *See Estate of Menifee v. Barrett,* 795 S.W.2d 810, 815 (Tex.Ct.App.1990) ("If the partial failure of consideration is not substantial, the proper remedy is by payment of money damages unless other remedies are provided by terms of the contract."); *see also Saranac Automatic Mach. Corp. v. Duke,* 67 F.2d 436, 437 (5th Cir.1933) (finding a partial failure of consideration where machine did not perform as warranted).

■ Furthermore, even if Crowne were unable to establish damages flowing from the breach of contract, dismissal of the instant case by this court would be inappropriate because Crowne would be entitled to nominal

damages on the basis of breach of the contract alone. The tenet of contract law that nominal damages are available upon a finding of breach of the contract has previously been recognized as being applicable in the context of § 301 suits. *See e.g., Weeks v. Local 1199, Drug Hosp. and Health Care Employees Union v. South Bronx Mental Health Council Inc.,* 892 F.Supp. 568 (S.D.N.Y.1995) (nominal damages would be appropriate because of breach of union constitution), *aff'd in part, reversed in part, Ascenio v. Local 1199, Drug, Hosp. and Health Care Employees Union,* 1996 WL 280136 (2d Cir.1996); *Pittston Coal Group, Inc. v. Internat'l Union, United Mine Workers of America,* No. 93–0162–A, 1994 WL 850524 (W.D.Va. July 27, 1994) (nominal damages appropriate for breach of collective bargaining agreement). Consequently, the Defendants' Motion to Dismiss Crowne's § 301 breach of contract claim is due to be DENIED.

### V. *CONCLUSION*

The court recognizes that the effect of this decision, assuming the allegations of the Complaint to be true, is to allow an individual and a union to deceitfully induce a company into settling a labor dispute by agreeing to keep the settlement confidential, knowing that they had no intention of abiding by that agreement, and then breach the agreement with no consequences to the individual and only a breach of contract claim being viable against the union. The court is persuaded, however, that this is in keeping with federal statutory policy, as interpreted by the Supreme Court and the Eleventh Circuit Court of Appeals, that *all* disputes involving interpretation of contracts between employers and unions are to be governed by federal law. Therefore, if remedies for misrepresentation, deceit and bad faith are not provided by federal law, they are not available.

For the reasons discussed above, Crowne's Motion to Remand is due to be DENIED and the Defendants' Motion to Dismiss is due to be GRANTED in part and DENIED in part.

Therefore, it is ordered that the Motion to Remand is DENIED. It is further ordered that the Motion to Dismiss is GRANTED as to the state law claims for fraud, deceit, and bad faith because they are completely preempted by § 301 of the LMRA. The Motion to Dismiss is also GRANTED as to Defendant Seidenfaden, and he is DISMISSED as a party Defendant, and GRANTED as to the punitive damages claim, but the Motion to Dismiss is DENIED as to Crowne's remaining § 301 breach of contract claim.

Defendant is DIRECTED to file its Answer on or before April 7, 1997.